MARTIN L. BARNES *vs.* INHABITANTS OF CHICOPEE.
JOSEPH CARPENTER *vs.* SAME.

Hampden.  Sept. 23. — Nov. 1, 1884.  C. ALLEN & COLBURN, JJ., absent.

A town is not bound to erect barriers to prevent a person travelling with a horse and wagon from straying from a highway, although there is a dangerous place thirty-four feet from the marked travelled part of the highway, and nine and a half feet from the line of the location of the highway, which he may reach by so straying.

TWO ACTIONS OF TORT for injuries occasioned to the plaintiffs by a defective highway in the defendant town.  The cases were tried together in the Superior Court, before *Pitman*, J., who reported them for the determination of this court, in substance as follows:

The highway in question is in the village of Chicopee Falls, so called, running from the Granby Road westerly to Holyoke, and at about a right angle with said road.  At the point where the injury happened, the highway is fifty feet wide, and is a common earth road without pavements or sidewalks.  At the time of the injury, there was a marked travelled path in the road, made by use and the passage of teams, and also a plainly marked path worn by foot-passengers.  The footpath was on the extreme southerly line of the highway.  On the south side of the highway as located, and nine and a half feet therefrom, is the top of a bank, being the north bank of the Chicopee River, which is thirty or forty feet high from the river, and level with the road.  There is no rail or guard of any kind upon the bank. From the worn track of teams to the edge of the bank the distance is thirty-four feet.  The accident occurred about half-past six o'clock in the evening of November 30, 1883; it was cold and dark.  Opposite the point where the highway joins the Granby road there is a street lamp, which was unlighted at the time of the injury.  The plaintiff Carpenter, with his two children, aged respectively five and nine years, together with one Mitchell Carpenter, his cousin, a man of about twenty-five years, started to drive from Chicopee Falls over said highway to their home in South Hadley Falls, using a horse, wagon, and harness belonging to the plaintiff Barnes.  At a point on the

highway, about seventy-five feet from the Granby road and from the unlighted lamp, the hat of one of the children blew off and out of the carriage ; the horse was stopped, and Mitchell Carpenter got out and ran back to get the hat, when the horse began to back, and in an instant, notwithstanding the efforts of both men, went down the bank, with all the people above mentioned. The horse was killed, the carriage and harness broken, and the plaintiff Carpenter injured. At the time the horse began to back, the carriage was not in the marked carriage path, but was upon the southerly side of the highway, nine and a half feet from the edge of the bank, and in the path made by foot-passengers. The plaintiff Carpenter, who was driving the horse, did not know that the carriage was near the bank until the horse began to back, not being able in the darkness to see the travelled track or the edge of the bank.

The plaintiffs contended that the want of a guard or railing upon the bank was a defect. The defendant contended that it was not bound to maintain a railing or guard thereon ; and the judge so ruled, and directed verdicts for the defendant.

If the ruling was correct, judgments were to be entered on the verdicts ; otherwise, the cases to stand for trial.

*E. H. Lathrop*, for the plaintiffs.

*G. M. Stearns*, for the defendant.

DEVENS, J. To entitle the plaintiffs to recover, they must show that the defect in the highway " which caused the injury existed either in the highway, or so immediately contiguous to it as to make it dangerous to travel on the highway itself." *Sparhawk* v. *Salem*, 1 Allen, 30. The test is " whether there is such a risk of a traveller, using ordinary care, in passing along the street, being thrown or falling into the dangerous place, that a railing is requisite to make the way itself safe and convenient." *Alger* v. *Lowell*, 3 Allen, 402. *Adams* v. *Natick*, 13 Allen, 429. A town is therefore " bound to erect barriers or railings, where a dangerous place is in such close proximity to the highway as to make travelling on the highway unsafe. But it is not bound to do so, to prevent travellers from straying from the highway, although there is a dangerous place, at some distance from the highway, which they may reach by so straying." *Puffer* v. *Orange*, 122 Mass. 389, and authorities there cited.

In determining whether a defect is in such close proximity to the highway as to render travelling upon it unsafe, that proximity must be considered with reference to the highway " as travelled and used for the public travel," rather than as located. *Warner* v. *Holyoke,* 112 Mass. 362. While it may be impossible to define at what distance in feet and inches a dangerous place must be from the highway in order to cease to be in close proximity to it, and while it must often be a practical question, having regard to many circumstances to be decided by a jury, yet it has been held in certain cases, as matter of law, that a jury was not authorized in finding that the dangerous place was in such proximity to the highway as to render travelling thereon unsafe.

Thus, in *Murphy* v. *Gloucester,* 105 Mass. 470, the defective place was twenty-five feet from the highway; in *Puffer* v. *Orange, ubi supra,* it was from twenty to thirty feet; in *Daily* v. *Worcester,* 131 Mass. 452, it was twenty-eight feet. In all these cases, the place where the accident happened was reached by passing over a level space, which intervened between it and the highway, yet these defective places were held not dangerously contiguous.

The case at bar is within the rule thus adopted. As appears by the report, " there was a marked travelled path made by use and the passage of teams; " there was also a plainly marked path worn by foot-passengers. From the worn track of teams to the edge of the bank was thirty-four feet. This bank was nine and a half feet from the highway as located, and the foot-path was on the extreme southerly side of the highway. The causes of the injury to the plaintiff were the darkness, his failure to keep the carriage-path, his travelling on that made by foot-passengers at the extreme edge of the highway as located, and the subsequent misconduct of the horse. It cannot be said that a bank thirty-four feet from the travelled way as used rendered it unsafe to travel thereon. This distance was sufficient to provide for those contingencies which from time to time might render necessary a road somewhat wider than that actually travelled. *Judgments on the verdicts.*