## GILDA R. MONTEROSSO & another[1] vs. ROLAND J. GAUDETTE & others.[2]

Berkshire. May 21, 1979. — July 11, 1979.

Present: GOODMAN, ROSE, & GREANEY, JJ.

*Negligence*, Stairway, One owning or controlling real estate, Invited person, Licensee, Trespasser. *Landlord and Tenant*, Landlord's liability to tenant or one having his rights, Control of premises, Repairs.

In a negligence action to recover for injuries sustained by the plaintiff when she fell in a landing off a common hallway in a commercial building leased by two stores, there was sufficient evidence to warrant jury consideration of the questions whether one of the defendant tenants negligently failed to warn of a potentially dangerous condition, whether he exercised control over the landing area, and whether the plaintiff's presence in the area was unlawful. [97-100]

In a negligence action to recover for injuries sustained by the plaintiff when she fell in a landing off a common hallway in a commercial building leased by two stores, the judge did not err in directing a verdict for one of the tenants where there was no evidence that she had any control of, or right to maintain or use, the landing area. [100-101]

In a negligence action to recover for injuries sustained by the plaintiff when she fell in a landing off a common hallway in a commercial building leased by two stores, evidence that the owner of the building retained a measure of control over the landing area and that the lease made her responsible for structural repairs was sufficient to warrant submission of the case against her to the jury. [102]

---

[1] Charles B. Monterosso, the plaintiff's husband, claimed loss of consortium and consequential damages. At trial, the loss of consortium claim was waived, and the parties stipulated that if the plaintiff recovered, the jury should award consequential damages directly to the plaintiff.

[2] Elsie W. Huston, owner of the building, and Eva Goodman, proprietor of Eva's Corsetorium; in the course of the proceedings below, Eva Goodman died and her executor, Harry Naparty, was properly substituted as a party in her place.

In a negligence action to recover for injuries sustained by the plaintiff
   when she fell in a landing off a common hallway in a commercial
   building, the judge erred in instructing the jury to determine
   whether the plaintiff was an invitee on the one hand or a trespasser
   on the other where the evidence raised the issue whether the plain-
   tiff was privileged to enter the area by virtue of the defendant's
   conduct providing her with reason to believe that she could enter
   if she so desired. [102-104]
In a negligence action to recover for injuries sustained by the plaintiff
   when she fell in a landing off a common hallway in a commercial
   building leased by two stores, the judge did not err in excluding
   evidence with respect to the person responsible for maintaining the
   lighting in the hallway since control of the hallway was not rele-
   vant to the duty owed by the various defendants toward the plain-
   tiff and since there was ample evidence to supply the jury with the
   circumstances of the use of the hallway as they related to the
   defendants' obligations to exercise reasonable care. [104-105]

CIVIL ACTION commenced in the Superior Court on July
15, 1975.

The case was tried before *Alberti*, J.

*Cynthia Spinola* for the plaintiffs.

*William G. White* for Harry Naparty, executor.

*John D. Lanoue* for Roland J. Gaudette.

*Owen R. Carrigan*, for Elsie W. Huston, submitted a
brief.

GREANEY, J. The plaintiff fell and was injured in a
landing off a common hallway located in a commercial
building in Pittsfield leased by two stores, City Used Fur-
niture and Eva's Corsetorium. She brought actions in
negligence[3] against City's sole proprietor, Roland J. Gau-
dette, Eva Goodman, and the building's owner, Elsie Hus-
ton. At the close of the evidence each of the defendants
properly moved for a directed verdict under Mass.
R.Civ.P. 50(a), 365 Mass. 814 (1974). The judge allowed
Eva's and Huston's motions, denied Gaudette's, and sent
the case against Gaudette to the jury by questions posed
to them for a special verdict under Mass.R.Civ.P. 49 (a),

---

[3] Nuisance claims against all three defendants were waived prior to
trial.

365 Mass. 812-813 (1974). The jury found Gaudette caus-
ally negligent but also found the plaintiff to be a trespass-
er.[4] Based on the answers to the questions in the special
verdict, the judge directed the entry of a judgment for
Gaudette.

On appeal, the plaintiff claims error in (a) the allow-
ance of Eva's and Huston's motions for directed verdicts,
(b) certain instructions given to the jury with respect to
Gaudette's liability, and (c) the denial of her motion for
a new trial (Mass.R.Civ.P. 59[a], 365 Mass. 827 [1974]), as
to all three defendants. Gaudette argues on appeal that
the judge should have granted his motion for directed
verdict. We hold that Gaudette's motion for a directed
verdict was properly denied and that Eva's motion was
properly allowed. We conclude that the evidence was suf-
ficient to warrant the submission of the case to the jury
as to the owner Huston and that there was error in the
jury instructions on the question of Gaudette's liability.
Accordingly, we reverse the judgments entered for Gau-
dette and Huston and order a new trial as to those two
defendants.

1. *Directed verdicts.* We first take up the questions
raised by the motions for directed verdicts. To frame the
discussion on these issues, we summarize the evidence in
the light most favorable to the plaintiff, under the famil-
iar standard that if there exists "anywhere in the entire
evidence any set of circumstances that will support a
reasonable inference in favor of the plaintiff," *Mazzafer-
ro* v. *Dupuis*, 321 Mass. 718, 719 (1947); *Campbell* v. *Ro-
manos*, 346 Mass. 361, 365 (1963), the motion must be
denied. *Becker's Inc.* v. *Breyare*, 361 Mass. 117, 121 (1972).

Huston owned a commercial building in which she
leased space to two stores, City Used Furniture and Eva's

---

[4] The jury gave the following answers to the first two questions
posed to them for a special verdict: "(1) Was the defendant Roland J.
Gaudette d/b/a City Used Furniture causally negligent? Yes." "(2)
Was the plaintiff, Gilda E. Monterosso a trespasser in the area im-
mediately adjacent to the hallway? Yes."

Corsetorium. In addition to their main entrances, both stores provided access to their customers from the rear parking lot by means of a back door which opened into a central hallway leading to both stores. Customers were invited to use this rear entrance by advertising signs indicating the presence of both enterprises, and would find the back door unlocked during the hours that either store was open for business. The central hallway was approximately thirty-two feet long and six feet wide, with two light fixtures in the ceiling. Entrances to the two stores were at the end of the hallway as one entered from the parking lot. From this perspective, Gaudette's door was to the left and Eva's was to the right of the hallway. Before reaching either store, a customer would pass several unmarked doors and openings as follows: to the right was a trap door which led to Eva's portion of the basement, and a door which led to a bathroom used by Eva's, which was always locked; immediately to the left as one entered the hall from the parking lot was an opening to a landing area, which was shielded only by a drape drawn across it. The landing area, one step down from the hallway, led to an open stairway descending to Gaudette's portion of the basement. The landing area was unlit, although a light in the basement could be turned on by a switch on the inside wall at the top of the stairs. Directly opposite the opening from the hallway, a step up from the landing, and on the same level as the hallway, was a bathroom for the use of Gaudette and his employees. The bathroom had a door and contained only a toilet. There was no sign in the hallway or on the bathroom itself indicating that it was private or that it could not be used by the public.

The plaintiff entered the building from the parking lot, on an evening when Eva's was open but City was closed, for the purpose of purchasing an undergarment at Eva's. Although she had stopped at Eva's on a previous occasion, she had never used the back entrance. As she walked into the corridor, she noticed Gaudette's bathroom immedi-

ately to her left, observing a "porcelain fixture" visible from the dimly lit hallway. She does not remember seeing a drape across the hallway opening. Because she wanted to freshen up before trying on an undergarment, she stepped into the unlit landing area, without realizing that there were steps down. She experienced "a feeling of falling," and next remembers walking in the parking lot, from whence she was transported to the hospital. An employee of Eva's retrieved the plaintiff's purse and glasses at the bottom of the stairs on Gaudette's portion of the basement and observed some blood at the base of the stairs.

The lease between Huston and Gaudette, which was introduced in evidence, leased to Gaudette the store and the basement area beneath it, and provided that Gaudette would have responsibility for repair and maintenance of the leased premises, while Huston was obligated to make all structural and major repairs. In addition, it specified that Gaudette was responsible for any changes in toilets required by State law, that he could not place signs in or on the building without Huston's written permission, and that he could install a staircase from the main store to the basement only at a place approved by Huston.

(a) *Gaudette's motion for directed verdict.* Gaudette argues that he was entitled to a directed verdict because there was no evidence that the landing area where the plaintiff fell, or the bathroom itself, was either leased to him or was otherwise under his control. For this proposition he relies upon *King* v. *G & M Realty Corp.*, 373 Mass. 658, 662 n.8 (1977), which quotes with approval Restatement (Second) of Property—Landlord and Tenant § 17.3 (1977). That section provides in pertinent part that "[a] landlord who leases a part of his property and retains in his own control any other part the tenant is entitled to use as appurtenant to the part leased to him, is subject to liability to his tenant and others lawfully upon the leased property . . . for physical harm caused by a danger-

ous condition upon that part of the leased property retained in the landlord's control, if the landlord by the exercise of reasonable care could have: (1) discovered the condition and the unreasonable risk involved therein; and (2) made the condition safe." Drawing on this language, Gaudette claims that the landlord, Huston, was in control of the landing area and, as a consequence, that she was solely responsible for any injuries to third persons that might occur as a result of the dangerous condition on the premises. We disagree.

Generally stated, a landlord is under "a common duty of reasonable care ... to all lawful visitors" on premises within his control. *Mounsey* v. *Ellard*, 363 Mass. 693, 707 (1973). But the scope of this general proposition as to the landlord's liability does not operate automatically to relieve a tenant of his duty to warn persons of dangerous conditions within his knowledge in areas appurtenant to his premises where those conditions foreseeably could cause harm to persons lawfully in such areas. The point that the landlord and the tenant may share joint responsibility in such circumstances is succinctly made by Comment (e) of the same section of the Restatement quoted above, which provides as follows: "e. *Effect of tenant's knowledge of dangerous condition.* The rule stated in this section applies to subject the landlord to liability to third persons entering the leased property, irrespective of whether the tenant knows or does not know of the dangerous condition. The tenant may, for example, know that the common entrance to the apartment or office he has leased has become dangerous for use because of the landlord's failure to maintain it in a safe condition. [The tenant's] *knowledge may subject him to liability to his own licensees if he fails to warn them of the danger* [emphasis supplied] ...." The judge correctly ruled that the evidence presented a jury question on the plaintiff's theory that Gaudette may have negligently failed to warn third persons of a potentially dangerous condition which might cause foreseeable harm with regard to the area of

the landing adjacent to his bathroom and his portion of the basement.

There was also sufficient evidence for jury consideration of whether Gaudette exercised control over the landing area and the bathroom. The lease provided that Gaudette was required to repair and replace the toilet if necessitated by State law; it also gave him the right to construct a stairway to his portion of the basement. The evidence indicated that the bathroom was provided for, and was used principally by, Gaudette and his employees. The landing area was an integral part of premises leased to Gaudette, and under the circumstances it was correct to place before the jury the issue of Gaudette's obligation to maintain premises under his control in a reasonably safe condition. Restatement (Second of Torts § 328C (1965). *Mounsey* v. *Ellard, supra. Crowell* v. *McCaffrey*, 377 Mass. 443, 444 (1979).

Gaudette finally argues that he was entitled to a directed verdict because as a matter of law the plaintiff was a trespasser as to him when she left the hallway and entered the landing area. He arrives at this conclusion on the basis of the evidence that Eva's was the only store open, that the plaintiff had been there previously and knew that Eva's store was on the opposite side of the hallway from the bathroom, that the bathroom was for the private use of Gaudette and his employees only, that he usually made sure the curtain was closed, and that he remembers specifically that it was closed on the night in question.[5]

A determination as a matter of law that a person is a trespasser can be made only where the uncontroverted facts will admit of no other conclusion. See *Mounsey* v. *Ellard*, 363 Mass. at 707 n.7. This is not such a case. By definition "a trespasser is a person who enters or remains

---

[5] As to this fact, we consider the testimony in light of the plaintiff's more favorable testimony that she became aware of the existence of the bathroom by observing a porcelain fixture from the hallway.

upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement (Second) of Torts § 329 (1965). He is in brief someone who lacks any right at all to be on another's property. There was evidence from which the jury could have found that Gaudette or his employees left the hallway curtain open on an evening when they knew that customers of Eva's would use the rear entrance, that the bathroom was not labelled "private" or otherwise marked out of bounds, and that Eva's bathroom was locked and unmarked. The judge correctly rejected the argument that the plaintiff was a trespasser as a matter of law because the evidence was sufficient to warrant jury consideration of the question whether her presence in the landing and bathroom area was lawful in that she had reason to believe that she could enter if she so desired.

(b) *Eva's motion for directed verdict.* The plaintiff argues that the judge should not have allowed Eva's motion for directed verdict because there was "sufficient evidence of control by [Eva's] of the hallway out of which arose a duty of care to warn or protect plaintiff, a lawful visitor on the hallway, against dangerous conditions existing immediately adjacent to it because it was foreseeable that she would deviate from the hallway to use the bathroom." In support of this argument, she directs our attention to two ancient precedents, *Learoyd* v. *Godfrey*, 138 Mass. 315 (1885) (finding of liability warranted when an invitee fell into a well within the area that he was invited to use), and *Barnes* v. *Chicopee*, 138 Mass. 67 (1884) (finding of no liability when an injury occurred as the result of a dangerous condition located thirty-four feet from a travelled way). These venerable cases are not relevant to the circumstances of this action. Placing them aside, it appears that the plaintiff has launched two theories against Eva: (1) that the use of the hallway itself was made dangerous by reason of the existence of an unsafe condition closely proximate to the hallway, and (2) that Eva had a duty similar to Gaudette's to warn her of haz-

ards in areas appurtenant to the premises leased to Eva. The plaintiff was not entitled to go to the jury on either proposition.

There was no evidence from which the jury could have concluded that the hallway itself was made dangerous by reason of the landing area. The hallway was safe for passage and remained so without regard to the landing area, and it is undisputed that the accident occurred in the landing area, not in the hallway. Furthermore, the contention that the landing area was appurtenant to premises leased to Eva neglects consideration of the important fact that occupation and control of portions of this building were divided among two tenants and the owner. Eva did not have any control of, or right to maintain or use, the landing area. That area was appurtenant to, or a part of, the premises leased to Gaudette; it was not appurtenant to or a part of the premises leased to Eva. The duty of a tenant to warn of, or correct a dangerous condition known to him is based on the assumption that the tenant either has control over the area where the condition exists or has the right to use that area. See, e.g., discussion and illustrations in Restatement (Second) of Property—Landlord and Tenant § 17.3, Comment (e) (1977). Eva neither had control over, nor the right to use, the landing area, and as a result, she lacked the authority to enter the landing or the adjacent bathroom to correct the unsafe condition. She also lacked the right to post warning signs or signals in the hallway as to the presence of the dangerous condition off the common hallway. The question of a duty on Eva's part is linked directly to her ability to remedy the conditions complained of. Because Eva did not use or possess, or have the right to use or possess, the landing, and because there was no evidence that the landing was a common area, the judge correctly ruled that the calculus of responsibility would neither impose a duty on Eva to correct the unsafe condition nor require her to warn about it.[6]

[6] In everyday terms, a tenant in an apartment building would not

(c) *Huston's motion for directed verdict.* The evidence as to Huston was sufficient to require submission of the case against her to the jury. It could have been found that she retained a measure of control over the landing area and the bathroom and that the lease made her responsible for structural repairs. Any efforts to make the landing safe, such as raising it to the level of the bathroom and the hallway, installing a light, or constructing a door to close it off from the hallway would have been within Huston's responsibility under the lease. Even the installation of a warning sign would, under the lease, have had to meet with Huston's prior approval. On the evidence, it was for the jury to determine whether Huston had maintained the premises in a reasonably safe condition under all the circumstances. Restatement (Second) of Torts § 328C (1965). *Crowell* v. *McCaffrey*, 377 Mass. at 444.

2. *Jury instructions.* The plaintiff questions the propriety of the judge's instructions as to her status with regard to the landing area. The judge read to the jury lengthy excerpts from *Mounsey* v. *Ellard, supra,* interspersed with his own explanations of the terminology. He indicated to the jury that "we no longer follow the common law distinctions between licensees and invitees . . .," *id.* at 707, and that the appropriate standard for their consideration was "the foreseeability of the visitor's presence and the time, manner, place and surrounding circumstances of his entry . . . ." *Id.* at 708-709. These portions of the instructions were all quite proper. However, throughout the instructions on the law of the case, the judge also informed the jury that if the plaintiff lacked an *invitation,* express or implied, *to* be upon the landing area, then she would be a trespasser entitled to recover only upon a showing of wilful, wanton, or reckless conduct on Gau-

---

be under a duty to correct or warn about a dangerous condition located exclusively within another tenant's apartment. Eva's exposure to liability fits within the concept illustrated by this example.

dette's part.[7] We conclude that it was improper in this case to formulate the question of the plaintiff's presence in terms of the mutually exclusive categories, of an "invitee" on the one hand or a "trespasser" on the other. The instructions and the second special question tied the lawfulness of the visit to an invitation; but the evidence clearly opened a middle ground as to the plaintiff's presence, that of someone who was privileged to enter the area within another's control by virtue of the occupant's conduct providing her with reason to believe that she could enter if she so desired. In such circumstances, the occupant would owe a duty to correct or warn of dangerous conditions which the person lawfully on the premises would not observe and avoid. In the old parlance this would have led to the plaintiff's being considered a "licen-

---

[7] Early in the charge the judge stated: "It . . . is not an issue on anybody's part that she was either expressly or impliedly an invitee to come into that common hallway and go through. What is in issue is that area to the left of that hallway through the doorway and beyond. The issue is one, for you to decide have you been persuaded . . . that the plaintiff had an invitation, was what we call an invitee, either expressly or impliedly to go into that area. Because, if you find that she had no such invitation, had no right to be there, then she is what in the law is called a trespasser." Later he stated: "What must be shown here in this case is negligence. One, that there was a duty in this case to warn, and this is what the plaintiff has alleged, and sought to prove, and it is for you to determine whether or not she has proven it, that the position of the plaintiff was that she was some kind of invitee, not only in the hallway, which is not disputed, but an invitee into that area to the left." He then read excerpts from *Mounsey*, explaining: " 'Lawful' has some meaning there. That is that person has a right to be there, and is not a trespasser." Near the end of the charge the judge stated: "Now, the final thing that we will be dealing with is—before we get into the question of damages—trespass. Bear in mind what my instructions were before on trespass. We are dealing now with that area not in the common hallway, but adjacent to that. You must determine whether or not the plaintiff was an invitee, expressly or impliedly, to that area. If there was no expressed or implied invitation to go into that area, you would be warranted in finding that the plaintiff was a trespasser − and not entitled to recover, because the duty owed to a trespasser by a defendant is to refrain from wanton and wilful misconduct, which has not been alleged or proven in this case."

see," a presence which has been explicated by the Restatement as follows: "An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so." Restatement (Second) of Torts § 332, Comment b (1965). Since *Mounsey*, instructions should be designed to frame the analysis of the issues before the jury apart from the definitional subtleties of status classifications because "the status question often prevents the jury from ever determining the fundamental question whether the defendant has acted reasonably in light of all the circumstances in the particular case." *Mounsey, supra* at 707. An instruction which fails clearly and fully to inform the jury of the "significant difference in the legal status of one who trespasses on another's land as opposed to one who is on the land under some color of right" (*id.* at 707 n.7) is misleading. The plaintiff adequately saved her rights to a correct instruction, as to the distinction still operative in our case law between someone lawfully present and an adult trespasser[8] to the extent that the distinction was required to settle the issues in the case. The instruction given did not adequately explain this difference and as a result was erroneous.

3. *Evidentiary problem.* One evidentiary issue is likely to recur at the retrial. The plaintiff objected to the judge's exclusion of certain evidence sought to be elicited from Gaudette as to the identity of the person or persons maintaining the lighting in the hallway. The offered evidence was rightly excluded because control of the hallway was not otherwise relevant to the duty owed by the various defendants towards the plaintiff, and because there was

---

[8] The duty of reasonable care by occupiers of land now has been extended to the previously unprotected classes of helplessly trapped trespassers, *Pridgen* v. *Boston Housing Authy.*, 364 Mass. 696 (1974), and child trespassers, *Soule* v. *Massachusetts Elec. Co.*, 378 Mass. 177 (1979), but has not yet been extended to adult trespassers.

more than ample evidence in the case to supply the jury with the circumstances of the use of the hallway as they related to the obligations of the defendants to exercise reasonable care for her safety.[9]

In summary, the plaintiff's evidence was sufficient to enable the jury to consider whether Gaudette and Huston had discharged the duty imposed on occupants of premises to maintain those premises in a reasonably safe condition for persons lawfully thereon. The evidence did not present such a question as to Eva. At the retrial, the formulation of the instructions should, to the extent that labeling becomes necessary, adequately explain the distinction between someone who is lawfully present on the premises and someone who is a trespasser.

The judgment entered for the defendant Eva is affirmed. The order denying Gaudette's motion for a directed verdict is affirmed. The judgments entered for Gaudette and Huston are reversed and the case is remanded for a new trial as to those two defendants.

*So ordered.*

---

[9] For the same reason the judge properly declined to give jury instruction no. 9 proposed by the plaintiff, which dealt with the existence of a dangerous condition *in the hallway.*