CONSTANCE G. HOPKINS & another[1] vs. F. W.
WOOLWORTH CO. & others.[2]

Hampshire.  January 16, 1981. — April 17, 1981.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*Landlord and Tenant*, Control of premises, Landlord's liability to third
person, Repairs. *Negligence*, One owning or controlling real estate.

A provision in a lease requiring the landlord to keep the sidewalk in front
of a tenant's department store in repair did not automatically relieve
the tenant of liability to a shopper who was injured when she fell on
the sidewalk where the lease also granted the tenant the option to
make repairs at the landlord's expense if it became necessary to do so
promptly in an emergency and where the tenant had known of the
dangerous condition of the sidewalk for nearly two years prior to the
accident.  [704-706]

CIVIL ACTION commenced in the District Court of Hamp-
shire on January 18, 1978.

Upon removal to the Superior Court, a motion for sum-
mary judgment was heard by *Moriarty*, J.

*Edward J. Shagory* (*Richard J. Mercer* with him) for
Charles Schnier & another.

*Constance M. Sweeney* (*Frank E. Antonucci* with her)
for the plaintiffs.

*Howard Gregory Williams* for F. W. Woolworth Co.

KASS, J.  While shopping at the Mountain Farms Mall in
Hadley, the plaintiff Constance Hopkins fell on the side-
walk in front of a Woolco department store operated by the
defendant F. W. Woolworth Co. (Woolworth).  Woolco
was one of approximately forty stores in the shopping center.

---

[1] James Hopkins, husband of Constance G. Hopkins.

[2] Charles Schnier and Esther L. Schnier.

The lease which governed the relationship of Woolworth, as tenant, and its landlord, Charles and Esther Schnier (the Landlord), classified sidewalks in the mall as common facilities which it was the Landlord's duty to maintain and keep illuminated. On the strength of the allocation of maintenance responsibility in the lease, Woolworth moved for summary judgment. Its motion was allowed (Mass.R.Civ.P. 56, 365 Mass. 824 [1974]), and judgment for Woolworth entered in accordance with Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). We reverse that judgment.[3]

As early as March 11, 1974, Woolworth notified the Landlord that the sidewalk in front of its store was cracked and buckled and that it represented a tripping hazard. Indeed, a fourth such demand in 1974 upon the Landlord for repairs to the sidewalk warned that repairs must be made before a "serious accident" occurred. Plaintiff had her fall on January 17, 1976.

Article 16 of the lease required the Landlord to keep the sidewalks in repair, and article 18 required the Landlord to save Woolworth harmless from all claims for loss arising out of use of the common facilities of the shopping mall. Those provisions are powerfully suggestive of the Landlord's control of the sidewalk, and it is settled that the party in control of premises owes a duty to a lawful visitor to keep them in reasonably safe condition. *Nichols* v. *Donahoe*, 309 Mass. 241, 242 (1941). *Mounsey* v. *Ellard*, 363 Mass. 693, 707 (1973). *Romano* v. *Massachusetts Port Authy.*, 3 Mass. App. Ct. 765 (1975). *Marsden* v. *Eastern Gas & Fuel Associates*, 7 Mass. App. Ct. 27, 29 (1979). The repairs provisions of the lease, however, also granted to the tenant the option to make repairs at the Landlord's expense if it became necessary to do so promptly in an emergency. Several letters written by Woolworth in the spring, summer, and fall of 1974 to the Landlord sounded a note of urgency,

---

[3] As a consequence of the summary judgment in favor of Woolworth a summary judgment also entered which dismissed Woolworth's third-party claim against the Landlord.

.

e.g., "the conditions present a real bad *tripping hazard*" (emphasis in original), "hazardous condition," and "make necessary repairs before there is a serious accident." In view of this recognition of imminent danger, Woolworth was in a position to exercise its self-help rights under article 16, and, as to business invitees to whom it might be liable, had a measure of control. But see *Stone* v. *Sullivan,* 300 Mass. 450, 454 (1938), which stands for the proposition that as between a landlord and tenant, the right to make repairs does not import control.

Customarily a fact situation of the sort here presented has provoked an inquiry as to who, landlord or tenant, had control. See, e.g., *Hannon* v. *Schwartz,* 304 Mass. 468, 470 (1939); *Nunan* v. *Dudley Properties, Inc.,* 325 Mass. 551, 553 (1950); *Schallinger* v. *Great Atl. & Pac. Tea Co.,* 334 Mass. 386, 390-391 (1956); *Underhill* v. *Shactman,* 337 Mass. 730, 733 (1958); *Leonardo* v. *Great Atl. & Pac. Tea Co.,* 340 Mass. 450, 453-455 (1960). Although this line of cases does not use the phrase "exclusive control," the underlying assumption in each of them appears to be that if the landlord had control of a particular area or instrumentality, the tenant did not, and vice versa. As early as *Clifford* v. *Atlantic Cotton Mills,* 146 Mass. 47, 49 (1888), however, the court (speaking through Holmes, J.) acknowledged a tendency "to look no further back than the last wrongdoer, especially when he has complete and intelligent control of the consequences of the earlier wrongful act." More recent cases have deemphasized control as the all-decisive determinant and have focussed the inquiry on whether the defendant owed a duty of care to the plaintiff. So, while a reservation of control will subject a landlord to liability, the tenant is not thereby automatically relieved of duty or liability to his invitees if that tenant is aware of the unsafe condition. *Monterosso* v. *Gaudette,* 8 Mass. App. Ct. 93, 97-98 (1979). Restatement (Second) of Property, Landlord and Tenant § 17.3, Comment e (1977). See generally *King* v. *G & M Realty Corp.,* 373 Mass 658, 660-662 (1977),

and *Young* v. *Garwacki*, 380 Mass. 162, 164-171 (1980), both of which involved residential property.

Shopping centers typically involve shared facilities and, as this case illustrates, overlapping responsibilities. Where there is dual control there may be dual liability. See Restatement (Second) of Torts § 360, Comment a (1965). As regards Woolworth, it had a duty to keep the premises used by its patrons in a reasonably safe condition and, at the least, to warn customers of any danger of which it knew or should have known. *Young* v. *Food Fair, Inc.*, 337 Mass. 323, 324 (1958). *Leonardo* v. *Great Atl. & Pac. Tea Co.*, 340 Mass. at 455. *Ventor* v. *Marianne, Inc.*, 1 Mass. App. Ct. 224, 225 (1973). Restatement (Second) of Torts § 343 (1965). Even if a finding were warranted that Woolworth had no control over the sidewalk on which the plaintiff fell, it would not be relieved from its duty to warn its invitees of danger. *Romano* v. *Massachusetts Port Authy.*, 3 Mass. App. Ct. at 765-766 (1975). Compare *Underhill* v. *Shactman*, 337 Mass. at 733, in which a shopping center tenant was found not liable for injury to a customer, sustained in a parking lot which it was the landlord's duty to maintain, but which the tenant could supply with parking attendants. The hazard in that parking lot, however, was much more distant from the tenant's store, and substantially less obvious, than the sidewalk defect to which Woolworth in the instant case called eloquent and repeated attention.[4] Summary judgment should not have been entered for Woolworth because it shared responsibility for the sidewalk and, if it did not repair the sidewalk, had a duty to warn its customers of the hazard.[5]

---

[4] Woolworth was an activist in correspondence, if not in tangible deeds. It dispatched fifteen letters to the Landlord, five before the accident and ten after.

[5] The discovery materials offered in support of summary judgment do not disclose where the fall occurred, leaving open a material fact. If a fall occurs in an entranceway to a store, the duty of care is still more clearly that of the proprietor of the store. Compare *Schallinger* v. *Great Atl. & Pac. Tea Co.*, 334 Mass. at 390; *Dias* v. *Woodrow*, 342 Mass. 218 (1961).

Nothing we have said is to be read as casting doubt on the validity of the allocation of maintenance responsibility in the lease between the Landlord and Woolworth or the Landlord's obligation in article 18 to indemnify Woolworth for the consequences of its failure to keep the common sidewalk in repair. See *Great Atl. & Pac. Tea Co.* v. *Yanofsky*, 380 Mass. 326, 329-333 (1980). That is a matter between the Landlord and Woolworth, but does not bind the plaintiffs, who were not a party to the lease. See *Boronskis* v. *Texas Co.*, 344 Mass. 477, 480 (1962); *Great Atl. & Pac. Tea Co.* v. *Yanofsky, supra* at 333-334.

It was not necessary for the plaintiffs and the Landlord to counter Woolworth's motion for summary judgment with affidavits. The burden is on the moving party to establish that there is no dispute over a material fact. Failure to do so will "without more from his opponent, defeat his motion." *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 554 (1976).

*Judgment reversed.*