Donald and Barbara CLAUSON for Themselves and as Guardians Ad Litem for Shaun Clauson, a Minor, Plaintiffs and Appellants,

v.

Lee A. KEMPFFER, Defendant and Appellee,

and

Peggy Ann Smith and Randy Knox, Defendants.

No. 17384.

Supreme Court of South Dakota.

Considered on Briefs Sept. 10, 1991.

Decided Nov. 6, 1991.

Wynn A. Gunderson and Daniel E. Ashmore, Gunderson, Palmer, Goodsell & Nelson, Rapid City, for plaintiffs and appellants.

Jay C. Shultz, Lynn, Jackson, Shultz & Lebrun, Rapid City, for defendant and appellee, Kempffer.

WUEST, Justice.

This is an appeal from a grant of Summary Judgment. We affirm.

Shaun Clauson (Shaun), a fifteen-year-old high school student, after returning home on October 10, 1987, found one of his family's horses missing. While looking for that animal, Shaun rode his motorcycle along a private road which provided access to a group of acreages in the area. The road in question was previously a forest service road used by the public to gain access to public land. The United States Forest Service conveyed the road and the land on which the road was located. The Appellee, Lee Kempffer (Kempffer) purchased a portion of this land which included a portion of the roadway on which Shaun was riding. As Shaun approached Kempffer's land, he

was distracted by running horses. When he again focused on the road, he noticed what appeared to be a beer can lying on the roadway. He did not realize until too late the can was attached to a single smooth strand of wire strung across the road. He tried to stop, but could not. Instead, he lost control of the motorcycle and sustained substantial injury to one knee.

In September 1987, Kempffer began negotiating with Peggy M. Smith (Smith) and Randy Knox (Knox) to lease the property. Knox and Smith wanted to keep horses on the property. That was a common activity in the area. Kempffer agreed provided they took steps to keep the animals from wandering off the property. Knox, an experienced farrier, was knowledgeable about horses. He told Kempffer he would construct a smooth wire fence along the north side of the property using tree trunks as fence posts (the other sides of the property were already fenced). To facilitate construction of the fence, Kempffer paced off the property to locate its northern border. Kempffer stated in his deposition he had no knowledge as to the type of gate Knox intended to install, although he believed Knox would install a cattle guard (as some of the neighbors had done). Kempffer stated he left the fence and gate's construction to Knox's discretion and told Knox to use his "common sense."

The property was, in fact, leased to Knox and Smith on October 1, 1987 and they took possession. Kempffer moved to San Diego, California prior to construction of the gate and fence. Instead of a cattle guard, the tenants, Knox and Smith, erected a gate consisting of a single strand of wire strung between two posts with one or three beer cans as markers (Clauson claimed there was one beer can, while Smith stated there were three beer cans.) Kempffer stated he did not know of the gate until approximately one month after the accident.

After Shaun's accident, Donald and Barbara Clauson, for themselves and as Guardians ad Litem for Shaun (the Clausons), sued Kempffer, Knox and Smith alleging the gate across the private driveway owned by Kempffer was negligently constructed. Kempffer moved for summary judgment. The motion was granted. The Clausons voluntarily dismissed, with prejudice, their suit against Knox and Smith to facilitate the appeal of this case.

On appeal, we address whether the trial court erred in granting summary judgment in favor of the lessor, Kempffer. We first note our standard of review of orders granting summary judgment:

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. The non-moving party, however, must present specific facts which demonstrate a genuine, material issue for trial. When no genuine issue of fact exists, summary judgment is looked upon with favor and is particularly adaptable to expose sham claims and defenses. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of a trial court, affirmance of a summary judgment is proper.

*Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493, 498 (S.D.1990) (quoting *Wang v. Wang,* 447 N.W.2d 519, 521 (S.D.1989)). In *Taggart,* we stated that summary judgment is "usually not appropriate in negligence actions because the standard of a reasonable [person] must be applied to conflicting testimony. If, however, the facts are undisputed, the issue becomes one of law for the court to decide." *Id.* (quoting *Gasper v. Freidel,* 450 N.W.2d 226, 229 (S.D.1990)). More significantly, "the determination of whether a defendant owes a duty to a plaintiff does not require an examination of the facts; it is a question of law and summary judgment is appropriate when the trial judge resolves the duty question in the defendant's favor." *Erick-*

*son v. Lavielle*, 368 N.W.2d 624, 627 (S.D.1985).

The law of premises liability is based on possession and control.[1] W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law of Torts* § 57, at 386 (hereinafter Prosser & Keeton). The general rule regarding a landlord's liability is: a landlord, having parted with full possession of the premises to the tenant is not liable for injury to third persons caused by the tenant's negligence. *Wiggins v. Pay's Art Store*, 47 S.D. 443, 447, 199 N.W. 122, 123 (1924); *Byers v. Evans*, 436 N.W.2d 654, 655 (Iowa Ct.App.1988); *Updegraff v. City of Ottumwa*, 210 Iowa 382, 226 N.W. 928, 929 (1929) (citing cases). *See also, Johnson v. Kurn*, 95 F.2d 629 (8th Cir.1938). This rule is reflected in the Second Restatement of Torts:

> Section 355. Conditions Arising After Lessor Transfers Possession: General Rule
>
> Except as stated in §§ 357 & 360–362, a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee ... for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession.

Restatement (Second) of Torts § 355 (1965).[2]

Some exceptions to the general rule do exist, such as: (1) where a lessor contracts to repair the premises, Restatement (Second) of Torts § 357; (2) where an undisclosed, dangerous condition exists at the time the lease is entered into which the lessor knew or should have known about; *Id.*, § 358; *Waterhouse v. Jos. Schlitz Brewing Co.*, 16 S.D. 592, 94 N.W. 587 (1903); *Patterson v. Jos. Schlitz Brewing Co.*, 16 S.D. 33, 91 N.W. 336 (1902); (3) where the lessor retains in his control a common area of the premises which the lessee is entitled to use as appurtenant to the leased portion, Restatement (Second) of Torts § 360; *Boe v. Healy*, 84 S.D. 155, 168 N.W.2d 710 (1969); *West v. Hanley*, 73 S.D. 540, 45 N.W.2d 455 (1950), or is necessary for the safe use of lessee's portion, Restatement (Second) of Torts § 361; or (4) where the lessor, in fact, makes repairs on the land while it is in the lessee's possession and the lessor completes the repairs negligently, *Id.* § 362. In the case before us, none of these exceptions apply. The entire premises was leased to Knox and Smith. The lease provided for a minimum six-month term. The tenants, Knox and Smith, were responsible for making repairs, although Kempffer agreed to reimburse them for their expenses. Finally, the dangerous condition did not come into existence until after Kempffer transferred possession.

Following the general rule, Kempffer could not be held liable for construction of the dangerous gate which occurred after he had given up possession. The Clausons acknowledge the general rule of non-liability for dangerous conditions which arise on the property after possession and control is transferred to the tenant.[3] The Clausons

---

1. Restatement (Second) of Torts § 328E defines the possessor of land as:
   (a) a person who is in occupation of the land with intent to control it or
   (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it....
   Restatement (Second) of Torts § 328E (1965).

2. The rationale for this rule of law is stated in Prosser and Keeton on Torts:
   When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the premises for the term. The lessee acquires an estate in land, and becomes for the time being both owner and occupier, subject to all of the responsibilities of one in possession, to those who enter upon the land and those outside of its boundaries. Prosser & Keeton, *supra* § 63, at 434 (footnotes omitted).

3. Nonetheless, the Clausons rely on *Hopkins v. F.W. Woolworth Co.*, 11 Mass.App. 703, 419 N.E.2d 302 (1981) and *Combs v. Aetna Ins. Co.*, 410 So.2d 1377 (Fla.Dist.Ct.App.1982) for the proposition that control of the premises is not the sina qua non of landlord liability. Both cases involved injuries which occurred in mall parking lots. In those cases the appellate courts reversed summary judgments for the defendant *lessees* where the dangerous condition existed in areas controlled by the lessors, and the lessees had actual or constructive knowledge of the danger. The courts held that the lessee had a duty to protect its customers. Those cases are quite dissimilar to this case in important

urge that an exception to the general rule of lessor non-liability should be recognized here because Kempffer, while still in possession of the property, assisted Knox in locating the north boundary of the property; knew that Knox intended to erect a smooth wire fence; and should have realized that, in all likelihood, his tenants would not spend a great deal of money on the gate. Thus, Clausons argue, Kempffer should have known that Knox and Smith would erect a single strand wire gate and that Kempffer owed a duty to Shaun to take steps to warn him of the gate or to insure that it was safely constructed.

In support of their argument, the Clausons cite Restatement (Second) of Torts § 379A.[4] The New York Court of Appeals has invoked section 379A by analogy to impose landlord liability based on public policy considerations, where the landlord "prior to leasing the premises, has knowledge that the tenant may be expected to carry on activities on the premises in such a manner as unreasonably to expose third persons to risk of physical injury." *Strunk v. Zoltanski*, 62 N.Y.2d 572, 468 N.E.2d 13, 15, 479 N.Y.S.2d 175, 177 (1984) (tenants owned vicious dogs of which landlord was aware).[5] Other New York courts have limited landlord liability to situations where the landlord had *actual* knowledge of the dangerous activity prior to entering into the lease, or where the landlord retained substantial control over the leased

premises when he learned of the activity. *Payne v. Pavese*, 98 A.D.2d 879, 470 N.Y.S.2d 860 (1983); *Georgianna v. Gizzy*, 126 Misc.2d 766, 483 N.Y.S.2d 892 (N.Y.Sup.Ct.1984). Other jurisdictions have similarly restricted landlord liability. *See, e.g., McCullough v. Bozarth*, 232 Neb. 714, 442 N.W.2d 201 (1989) (discussing several vicious dog cases); *Vigil v. Payne*, 725 P.2d 1155 (Colo.Ct.App.1986). The *Georgianna* court stated that imposing liability based upon constructive notice would be "oppressive and unreasonable." *Georgianna*, 483 N.Y.S.2d at 894.

Even if we were to accept the holdings and rationale of the above cases, they do not sustain the Clausons' argument that Kempffer had a duty to protect third parties. At most, Kempffer had constructive knowledge of the gate's presence. Although he was aware of the type of fence Knox intended to erect and its approximate location, Kempffer exercised no control over the design of the gate or type of gate used. He left this decision entirely to Knox's discretion. Even the Clausons do not assert that Kempffer had actual knowledge of the gate's presence prior to relinquishing control.

The Iowa Court of Appeals refused to extend landlord liability via § 379A under facts very similar to this case stating:

[We are not prepared] under the factual setting of this case, to adopt section

---

aspects. In both cases, the landlord and the tenant were in possession of a portion of the premises. Additionally, in both the *Hopkins* and the *Combs* cases, the plaintiffs were invitees of the tenants, arguably subjecting the tenants to a higher duty of care.

**4.** § 379A Activities After Lessor Transfers Possession.

A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if,

(a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and

(b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary for safety would not be taken.

Restatement (Second) of Torts § 379A.

**5.** Section 379A is another exception to the general rule of lessor non-liability. We do not believe Restatement (Second) of Torts § 379A is applicable to this case. Section 379A is expressly limited to cases involving an unreasonable risk of harm to others *outside of the land.* In addition, to hold a lessor liable for injuries which occur "off the land," the plaintiff must show that the injury resulted from the ordinary and expected use of the premises or from the purpose for which the premises was leased, not for activities which are dangerous only because negligently conducted by a lessee. *Midland Oil Co. v. Thigpen*, 4 F.2d 85, 91 (8th Cir.1924); *Murray v. McCormick*, 232 S.W. 733 (Mo.App. 1921). Leasing land for the purpose of grazing horses is simply not the type of activity for which a landlord will be held liable under Restatement § 379A, since grazing horses would be dangerous to others only if done negligently.

379A to the extent that the building of fences, pens, and the raising of swine on leased property after the premises have been leased and which were not in existence at the time of the lease creates liability on the part of the landlord to third parties that are injured by swine that the landlord has no control over. *Byers,* 436 N.W.2d at 657.

Once Kempffer had obtained actual knowledge of the gate's presence, one month after the accident, he no longer retained any control over the premises. He had leased the entire premises to Knox and Smith for a six-month term, he reserved no right of re-entry, and he did not reserve any right to control what activities were performed on the land or how they were conducted.

In the words of the *Georgianna* court, "while a court might impose a duty when none existed before, ... such an imposition must be exercised with extreme care." *Georgianna,* 483 N.Y.S.2d at 894. Here, Kempffer exercised and retained no control over the leased premises when the dangerous condition came into existence. Knox and Smith were in possession of the entire premises. No facts were presented which would show Kempffer had actual knowledge of the construction of the gate at the time he relinquished possession. We hold the trial court was correct in granting Kempffer's motion for summary judgment.

HENDERSON, SABERS and AMUNDSON, JJ., concur.

MILLER, C.J., dissents.

MILLER, Chief Justice (dissenting).

I respectfully dissent. I would reverse the trial court's summary judgment and remand for trial.

The majority affirms, relying in large part upon selected sections in the Restatement (Second) of Torts, and authorities supporting the same. It then proceeds to identify, and then ignore, one section of the Restatement and supporting authority which is particularly relevant to this appeal.

Restatement (Second) of Torts § 379A provides:

A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession, if, but only if,

(a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and

(b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk or that special precautions necessary for safety would not be taken.

In addition to the cases cited by the majority adopting and upholding the § 379A language, several other jurisdictions follow its principle. *Gonzales v. Bierman,* 773 P.2d 629 (Colo.App.1989) (summary judgment in favor of landowner reversed because evidence supported allegation that landowner knew tenant kept horses on the land and that fences were in poor condition); *Bober v. New Mexico State Fair,* 111 N.M. 644, 808 P.2d 614 (1991) (summary judgment in favor of landowner reversed because genuine issue of material fact existed as to whether landowner parted with possession and control of premises by its lease agreement with third party).

It is for the jury, and not the judges or justices, to ascertain whether the lessor "consented to the activity," "knew it would be carried on," "knew or had reason to know that it would unavoidably involve such an unreasonable risk or that special precautions necessary for safety would not be taken."

There are several genuine issues of material fact for the jury to consider. For example: (1) whether lessor advised lessees of the use of the road by the public; (2) the assertion that lessor was involved in the planning of the fence and gate and gave certain directions as to its construction; (3) lessor knew there would be some gate installed across the road; (4) lessor knew that the fence and gate would be placed there because of his insistence that lessees' horse be kept within the property boundaries; (5) lessor admitted that the fence

was for his benefit; (6) lessor imposed no standards as to be assured that the fence and gate would be built in a safe manner; (7) lessor made no notification to neighbors that the fence and gate would be constructed; and, (8) lessor knew that the road was traveled by the neighbors, and the injured boy on his motorcycle, in particular.

There being genuine issues of fact, summary judgment should have been denied and the issues presented to a jury.