Kottmyer, J.
INTRODUCTION
Plaintiff brings this action against defendants James Zegouros (“Zegouros”), Gasoline Merchants, Inc. (“Gasoline”), and Mobil Oil Corporation (“Mobil”) to recover for the murder of Bechara Alam (“Bechara”) while he was working at a gas station operated by his brother Anis Alam (“Alam”). Plaintiff claims Zegouros, Gasoline, and Mobil negligently failed to advise and supervise Alam as to the safe operation of the station, failed to warn Bechara of the possibility of criminal attack, and failed to provide adequate security measures. Defendants Zegouros and Gasoline now move for summary judgment. For the following reasons, Zegouros and Gasoline’s motion for summary judgment is DENIED.
BACKGROUND
The facts in the light most favorable to the plaintiff are as follows. On the evening of March 24, 1993, Manual Alarcon (“Alarcon”) attempted to rob the Mobil gas station at Andover Street in Lowell (the “Andover Street Station”). Alarcon walked into the gas station’s office area and demanded that Bechara, the station’s sole attendant, hand over all the station’s money at gun point. Bechara resisted Alarcon. Alarcon shot Bechara in the chest and fled. Bechara was pronounced dead at the scene.
In 1967, Zegouros incorporated Gasoline as a Massachusetts Subchapter S corporation. Zegouros formed Gasoline to manage and operate gas stations throughout Massachusetts. Zegouros is Gasoline’s sole shareholder and president. Zegouros and Gasoline have substantial experience in the management and operation of gas stations. As of April 12, 1992, Zegouros and his corporation were involved in the operation of fifteen gas stations in Massachusetts and New Hampshire. Zegouros owned the land on which nine gas stations were located. He then leased various stations to Gasoline to manage. Gasoline owns four stations outright and leases two stations from owners other than Zegouros. Gasoline in turn contracted with others to manage and operate various stations it owned or leased.
Zegouros owned the land on which the Andover Street Station was located. Construing the facts in the light most favorable to plaintiff, he did not lease the Andover Street Station to either Gasoline or Alam. Gasoline, however, entered into an agreement with Alam entitled Retail Fuel Station Operator and Security Agreement (hereinafter the “Gasoline-Alam Agreement”). The Gasoline-Alam Agreement is not a lease. *402 Pursuant to the Gasoline-Alam Agreement Alam agreed to operate and manage the Andover Street Station. In return, Gasoline agreed to pay Alam six cents per gallon of gasoline sold at the station as commission. The Gasoline-Alam Agreement required Alam to account to Gasoline for all money collected, fuel tank readings, and meter readings. Alam was responsible for hiring all employees necessary to operate the station and paying their salaries. Alam hired his brother, Bechara, to help operate the station.
The Gasoline-Alam Agreement stated that Alam had exclusive control of the premises and all activities conducted thereon. Gasoline, however, reserved the right to set the retail price for all fuel sold at the station. Gasoline retained control over the station’s two service bays for storage. Pursuant to the GasolineAlam Agreement Gasoline required Alam to keep the Andover Street Station open Monday through Saturday from 6:00 a.m. to 10:00 p.m. and Sunday 6:30 a.m. to 10:00 p.m. Gasoline also prohibited Alam from using the Andover Street Station for parking, storage, rental, or sale of motor vehicles. It did not give Alam the right to make changes or improvements to the land or buildings.
The Andover Street Station was one of the busiest gas stations owned and/or operated by Zegouros and/or Gasoline. For the four-year period from 1988 to 1991 the Andover Street Station sold on average 1,127,200 gallons of gasoline per year. Although sales declined slightly in 1993, Alam sold 17,319 gallons of gasoline at the Andover Street Station from March 17, 1993 to March 23, 1993. This resulted in gross sales of $20,514 for the week. Alam’s six cent per gallon commission for the period totaled $1,039, leaving Gasoline and Zegouros $19,745 for the week.
The Andover Street Station was operated as a full service station. There were no self service pumps at the station. Neither Zegouros, Gasoline, nor Alam installed a secure, locked office from which the attendant could transact business. Instead customers could enter an unlocked office area to complete transactions face to face with the attendant. The only security devices present at the time of the murder were extensive lighting and three “floor safes” to deposit extra cash.
Neither Zegouros nor Alam was aware of any criminal activity at the Andover Street Station before the murder of Bechara. Zegouros was aware of teenagers breaking into stations he or Gasoline operated in Fitchburg and Lawrence. Two weeks after the death of Bechara the Andover Street Station was robbed again.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 36(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact and that the moving parly is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by either submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Control of the area where the injury occurred is the traditional method to determine whether one is liable for an injury. Hopkins v. F.W. Woolworth, Co., 11 Mass.App.Ct. 703, 705 (1981). The fundamental issue, however, is whether the defendant has a special relationship with the plaintiff creating a duty of care to the plaintiff. Id. A landlord, property owner, or tenant may have a duly to the plaintiff if they control the area in question and reasonably foresee the criminal acts of third parties. Irwin v. Ware, 392 Mass. 745, 756 (1984); McKinney-Vereschi v. Paley, 42 Mass.App.Ct. 953, 955 (1997); Sheehan v. El Johnan, Inc., 38 Mass.App.Ct. 975, 976 (1995), citing Hopkins v. F.W. Woolworth, Co., 11 Mass.App.Ct. 703, 705 (1981); Flood v. Southland Corp., 33 Mass.App.Ct. 287, 298 (1992).
The properly owner, landlord, or person in control of the premises must exercise reasonable care in preventing injury to one lawfully on the premises caused by the reasonably foreseeable acts of another, whether those acts are accidental, negligent, or intentional. McKinney-Vereschi v. Paley, 42 Mass.App.Ct. 953, 955 (1997). Reasonable foreseeability is determined by examining all the circumstances of the case. Flood v. Southland Corp., 416 Mass. 62, 72 (1993). Allegations of prior instances of criminal activity are not essential to plaintiffs claims. See Whittaker v. Saraceno, 418 Mass. 196, 197 (1994) (noting foreseeability issue not conclusively decided in landlord’s favor if no evidence of prior similar acts in evidence); McKinney-Vereschi v. Paley, 42 Mass.App.Ct. 953, 955 (1997) (stating plaintiffs failure to allege instances of prior criminal activity not fatal to her complaint). Allegations of prior instances of criminal acts are one factor in determining foreseeability, not a conclusive factor. Whittaker v. Saraceno, 418 Mass. 196, 197 (1994); McKinney-Vereschi v. Paley, 42 Mass.App.Ct. 953, 955 (1997). The issue of foreseeability is usually decided by a jury. Magaw v. Massachusetts Bay Transp. Auth., 21 Mass.App.Ct. 129, 132 (1985). But see Griffiths v. Campbell, 425 Mass. 31, 33 (1997) (holding as a matter of law murder of police officer on a drug raid not reasonably foreseeable).
The summary judgment record, in the light most favorable to plaintiff, indicates that there are genuine issues of material fact which preclude entry of sum *403 maiy judgment in favor of either Zegouros or Gasoline. Zegouros was the owner of the land on which the station was located. The Gasoline-Alam Agreement is an agreement for the independent operation of the Andover Street Station by Alam. There are material questions of fact as to whether Gasoline had leased the station from Zegouros as suggested by Zegouros in his deposition and, in any event, as to whether the Gasoline-Alam Agreement and Gasoline’s role in the operation of the business gave rise to a relationship between Gasoline and Bechara which created a duty of care on the part of Gasoline.
The summary judgment record further indicates that there is a genuine issue of material fact as to whether the murder of Bechara was reasonably foreseeable. Zegouros and Gasoline are experienced gas station operators. They have owned, leased, managed, and operated gas stations since 1967. They installed security devices, such as safes, to protect revenues from possible theft. Zegouros knew of burglaries at gas stations he owned or operated in Fitchburg and Lawrence. The fact that plaintiff did not submit evidence of prior criminal activity at the Andover Street Station does not entitle defendants to summary judgment on the issue of foreseeability. See McKinney-Vereschi v. Paley, 42 Mass.App.Ct. 953, 955 (1997) (knowledge of prior criminal activity only one factor to consider when determining foreseeability). See also Foley v. Boston Hous.Auth., 407 Mass. 640, 646 (1990) (noting courts generally reluctant to take issue of foreseeability away from jury); Magaw v. Massachusetts Bay Transp. Auth., 21 Mass.App.Ct. 129, 132 (1985) (stating issue of foreseeability for jury).
ORDER
For the reasons stated above, it is hereby ORDERED that defendants James Zegouros and Gasoline Merchants, Inc.’s motion for summary judgment is DENIED.