#26355-a-LSW
**2013 S.D. 71**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

RUSSELL ENGLUND and MARY
ENGLUND, INDIVIDUALLY, AND
AS THE GUARDIANS AD LITEM
OF GABRIELLE ENGLUND,                         Plaintiffs and Appellants,

v.

PAUL VITAL and KRISTINE VITAL,
INDIVIDUALLY, AND AS THE
GUARDIANS AD LITEM OF
KEENAN VITAL,                                 Defendants,

and

ROBERT SMITH,                                 Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA
* * * *
THE HONORABLE KATHLEEN K. CALDWELL
Retired Judge
* * * *

DANIEL K. BRENDTRO
JEFF COLE of
Zimmer, Duncan & Cole, LLP
Sioux Falls, South Dakota                     Attorneys for plaintiffs
                                              and appellants.


RICHARD L. TRAVIS
ERIC D. DENURE
LINDSAY K. EDWARDS of
May & Johnson, PC
Sioux Falls, South Dakota                     Attorneys for defendant
                                              and appellee.

* * * *

ARGUED ON MARCH 18, 2013
OPINION FILED **10/02/13**

#26355

WILBUR, Justice

[¶1.]  Twelve-year-old K.V. threw a softball-size rock that struck nine-year-old G.E. in the head.  The parties disagree whether the incident was an accident or intentional.  The incident occurred near the intersection of three backyards in Hartford, South Dakota.  One backyard belonged to the rental home of K.V.'s parents, the Vitals; the second belonged to G.E.'s parents, the Englunds; and the third belonged to the Vitals' landlord, Robert Smith.  Smith owned his own home, as well as the home next door, which the Vitals rented.  Following the accident, the Englunds brought suit, individually, and as guardians ad litem for G.E., against K.V., the Vitals, and Smith.  The claims against Smith included negligence and negligent rental.  Smith moved for summary judgment, which the trial court granted.  The Englunds appeal the trial court's grant of summary judgment in favor of Smith.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

[¶2.]  On July 7, 2008, twelve-year-old K.V. threw a softball-size rock that struck nine-year-old G.E.  The rock struck G.E. in the forehead and her skull was severely damaged.  Following the incident, G.E. was taken to the hospital where a titanium plate was inserted to repair her skull.  G.E.'s parents indicated that her behavior changed as a result of her injury.[1]

[¶3.]  The parties disagree as to the circumstances whereby the rock was thrown.  Prior to the incident, G.E. had been playing with K.V.'s younger sister,

---

1.  Specifically, G.E.'s parents "noticed changes to her demeanor, concentration, growth rate, her ability to handle complex tasks, and her response to adversity."

-1-

M.V. G.E. and M.V. had been building a "fort" in M.V.'s backyard. The children were not under adult supervision.[2] G.E. told her mother that she was running away from K.V. because he was chasing her with a rock. G.E. further told her mother that when she turned around to see if K.V. was still chasing her, she was hit with the rock. The Englunds also allege that K.V. may have washed off the rock before going to get help. Conversely, K.V. indicated that he was throwing rocks between two trees. He reported that after he threw the rock, he noticed G.E. run out from behind one of the trees. K.V. indicated that he yelled G.E.'s name to get her attention, but that when she turned around, she was hit by the rock. The parties agree that the rock came from the landscaping located alongside the Vitals' rental home.

[¶4.] At the time of the incident, G.E. and K.V. were neighbors. G.E. lived with her parents, the Englunds. K.V. lived with his parents, the Vitals. The Vitals and their landlord, Smith, lived in two separate homes directly behind the Englunds. Smith owned his home, as well as the property next door, which he rented to the Vitals. The backyards of all three properties were unfenced. There was evidence that the children had permission to play in Smith's backyard, which contained a swing set.

[¶5.] The parties disagree where the incident took place. G.E. indicated that she was on Smith's property when she was struck and that K.V. was standing near the lot line between the Vitals' rental property and Smith's home. K.V. stated that

---

2. Paul and Kristine Vital were at work at the time of the incident. G.E.'s mother, Mary Englund, was home at the time of the incident.

G.E. was running toward the side of her house when she was struck and that he was standing in his own backyard.

[¶6.] K.V. also indicated that a few weeks before the accident Smith saw K.V. throwing rocks at trees. According to K.V., Smith told him not to throw rocks toward Smith's house. The Englunds claim that Smith knew of K.V.'s propensity for rock throwing and that Smith agreed to remove the landscaping rocks from both his home and the Vitals' rental property. The Englunds also claim that prior to the incident, K.V. had lifted up a large piece of concrete "in a menacing manner" near a location where G.E. and M.V. were playing. The Englunds indicated that Smith had purchased a skid loader for the purpose of removing the rocks. Smith's wife, Katherine Smith, indicated that she and her husband had "talked about" moving the rocks, but that they "just [ha]dn't g[otten] to it yet." Smith, however, indicated that the skid loader was purchased to assist with snow removal.

[¶7.] The Englunds brought suit, individually, and as guardians ad litem for G.E., against K.V., the Vitals, and Smith. The claims against Smith included: negligence, negligent rental, and punitive damages. The claim of negligent rental, however, was conceded by the Englunds. Smith moved for summary judgment. The motion was granted. The trial court held that Smith owed no duty to G.E. The order granting summary judgment in favor of Smith was certified as final under SDCL 15-6-54(b). The Englunds now appeal the grant of summary judgment in favor of Smith. Accordingly, this appeal is limited to the Englunds' claims against landlord Smith.

[¶8.]    We address the following issues on appeal:[3]

      1.      Whether the trial court erred in granting summary judgment based, in part, on its determination that Smith did not owe G.E. a duty of care based on his position as landlord.

      2.      Whether the trial court erred in granting summary judgment based, in part, on its determination that Smith owed no duty to protect G.E. from the alleged intentional or criminal conduct of K.V.

## STANDARD OF REVIEW

[¶9.]    Upon review of a grant of summary judgment, "[w]e must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Brandt v. Cnty. of Pennington*, 2013 S.D. 22, ¶ 7, 827 N.W.2d 871, 874 (quoting *Jacobson v. Leisinger*, 2008 S.D. 19, ¶ 24, 746 N.W.2d 739, 745). "[A] material fact is one that might affect the outcome of the case[.]" *Smith ex rel. Ross v. Lagow Constr. & Developing Co.* (*Lagow*), 2002 S.D. 37, ¶ 9, 642 N.W.2d 187, 190. We view the evidence "most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists." *Brandt*, 2013 S.D. 22, ¶ 7, 827 N.W.2d at 874 (quoting *Jacobson*, 2008 S.D. 19, ¶ 24, 746 N.W.2d at 745). Ultimately, "[o]ur task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied." *Id.*

---

3.    Because G.E.'s designation as a licensee or invitee is not determinative to the outcome of this case, we decline to consider Appellant's request that we eliminate the distinction between invitee and licensee and adopt a duty of reasonable care for all lawful entrants upon land.

## DECISION

[¶10.]     1.     **Whether the trial court erred in granting summary judgment based, in part, on its determination that Smith did not owe G.E. a duty of care based on his position as landlord.**

[¶11.]     The Englunds argue that Smith, as the Vitals' landlord, owed a duty of care to G.E. "The landlord's liability has been said to be one sounding in tort and based upon negligence[.]" *Boe v. Healy*, 84 S.D. 155, 159, 168 N.W.2d 710, 712 (1969) (citation omitted). "Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." *Janis v. Nash Finch Co.*, 2010 S.D. 27, ¶ 8, 780 N.W.2d 497, 500 (quoting *Stone v. Von Eye Farms*, 2007 S.D. 115, ¶ 6, 741 N.W.2d 767, 770). "The general rule regarding a landlord's liability is: a landlord, having parted with full possession of the premises to the tenant is not liable for injury to third persons caused by the tenant's negligence." *Clauson v. Kempffer*, 477 N.W.2d 257, 259 (S.D. 1991) (citations omitted); *see also Hendrix v. Schulte*, 2007 S.D. 73, ¶ 9, 736 N.W.2d 845, 848.

[¶12.]     The Englunds argue that Smith owed G.E. a duty of care because he retained control over the Vitals' rental property. "The law of premises liability is based on possession and control." *Clauson*, 477 N.W.2d at 259 (citing W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law of Torts* § 57, at 386). Generally, "a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee . . . for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession." *Id.* (noting §§ 357 and 360-62 of the Restatement (Second) of Torts (1965) as exceptions).

[¶13.]    The Englunds assert that Smith saw K.V. throwing rocks and allegedly told K.V. to stop, thus, demonstrating control over the Vitals' rental property. Yet, K.V.'s deposition testimony suggests that Smith was asserting control over his personal residence rather than the Vitals' rental property. In his deposition, K.V. testified:

> **Q.** Had anybody ever talked to you about throwing rocks before this incident with [G.E.], saying that you shouldn't be throwing rocks?
>
> **A.** Robert Smith had stated that he didn't want me to throw rocks toward his house.
>
> **Q.** Robert Smith told you that?
>
> **A.** Yes, sir.
>
> **Q.** And that was before this incident with [G.E.]?
>
> **A.** Yes, sir.
>
> **Q.** Do you remember when that happened?
>
> **A.** That was the same time I was throwing them at the tree sir.
>
> **Q.** A couple weeks before?
>
> **A.** Yeah.
>
> **Q.** What did he tell you?
>
> **A.** Well, I was throwing them at the tree, which is throwing them toward his house. So he didn't want me to hit his house on accident, sir, so he told me not to throw them toward his house.

Accordingly, even if Smith saw K.V. throwing rocks and asked him to stop, the evidence reflects that Smith was asserting control over his own residence, rather than the rental home then occupied by the Vitals.

[¶14.]    The Englunds further argue that Smith demonstrated control over the Vitals' rental property by allegedly agreeing to remove the landscaping rocks from the Vitals' rental property and by purchasing a skid loader to remove the rocks. In

viewing the facts most favorably to the Englunds, we assume that Smith agreed to remove the rocks and purchased the skid loader in order to remove the rocks. Even if Smith agreed to remove the rocks in the future, he had not yet asserted control over the Vitals' rental property. The evidence suggests that the Vitals remained in control of the property they rented from Smith. Accordingly, the trial court properly granted summary judgment, based in part, on the fact that Smith had parted with possession of the Vitals' rental property.

[¶15.] The Englunds further argue that Smith should be liable, as a landlord, because his backyard constituted a common area. This Court has recognized several exceptions to the general rule that a landlord is not liable for injury to third persons so long as the landlord has "parted with full possession of the premises[.]" *Id.* One such exception is "where the lessor retains in his control a common area of the premises which the lessee is *entitled* to use as appurtenant to the leased portion[.]" *Id.* (emphasis added) (citing Restatement (Second) of Torts § 360 (1965)) (additional citations omitted). If the lessor maintains such a common area he is:

> subject to liability to his lessee and others lawfully upon the land with the consent of the lessee . . . for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

Restatement (Second) of Torts § 360 (1965).

[¶16.] The Englunds' position that Smith retained a common area under the Restatement (Second) of Torts § 360 requires that G.E. was *entitled* to be on Smith's property. The legal definition of "entitled" is "[t]o grant a legal right to or qualify for." *Black's Law Dictionary* (9th ed. 2009). Under this definition, G.E. was not

#26355

entitled to use Smith's yard. On the contrary, the Englunds indicate that Smith allowed all of the neighborhood children to use his backyard swing set.[4] Further, there is no evidence that the Vitals' rental agreement created an entitlement whereby the Vitals were allowed to use Smith's backyard as appurtenant to their rental home. Because neither the Vital children nor G.E. had a legal right to use Smith's backyard, it was not a common area as contemplated under the Restatement (Second) of Torts § 360. Further, even if Smith's backyard did constitute a common area, the "dangerous condition" or rock did not come from the common area. The parties agree that the rock thrown by K.V. came from the landscaping alongside the Vitals' rental home. Therefore, the trial court did not err in finding that Smith did not maintain his backyard as a common area and that the common area exception to the general rule of landlord liability did not apply.

[¶17.]     The Englunds argue that Smith, as a landlord, undertook a duty to repair when he allegedly agreed to remove the rocks. Another exception to the general rule of landlord liability, as set forth in Restatement (Second) of Torts § 362, is when a landlord purports to repair the land or actually "makes repairs on the land while it is in the lessee's possession and the lessor completes the repairs negligently[.]" *Clauson*, 477 N.W.2d at 259 (citing Restatement (Second) of Torts § 362 (1965)). In order for Restatement (Second) of Torts § 362 to apply, the landlord's agreement to make repairs must have "made the land more dangerous for

---

4.     Plaintiffs' Statement of Disputed Facts and Additional Material Facts dated August 23, 2011, provides: "Mr. Smith had a swing set in his backyard, which he invited all of the neighborhood children to use."

use or given it a deceptive appearance of safety[.]" Restatement (Second) of Torts § 362 (1965).[5] Further:

> The lessor is subject to liability if, but only if, the lessee neither knows nor should know that the purported repairs have not been made or have been negligently made and so, relying upon the deceptive appearance of safety, subjects himself to the dangers or invites or permits his licensees to encounter them.

Restatement (Second) of Torts § 362 cmt. d (1965).

[¶18.] Smith argues that Restatement (Second) of Torts § 362 is inapplicable under the facts of this case. We agree. First, even if Smith agreed to remove the rocks, his failure to do so did not make the land more dangerous for use. The condition of the land remained the same. Second, again assuming that Smith agreed to remove the rocks, his failure to do so did not give the land a deceptive appearance of safety. Further, there was no evidence that the Vitals or their neighbors, the Englunds, were under the impression that the rocks had been removed. Therefore, the trial court did not err in concluding that Smith, as a landlord, did not owe a duty to G.E. because he allegedly agreed to remove the rocks.

---

5. In full, the Restatement (Second) of Torts § 362 provides:

> A lessor of land who, by purporting to make repairs on the land while it is in the possession of his lessee, or by the negligent manner in which he makes such repairs has, as the lessee neither knows nor should know, made the land more dangerous for use or given it a deceptive appearance of safety, is subject to liability for physical harm caused by the condition to the lessee or to others upon the land with the consent of the lessee or sublessee.

[¶19.]    **2.    Whether the trial court erred in granting summary judgment based, in part, on its determination that Smith owed no duty to protect G.E. from the alleged intentional or criminal conduct of K.V.**

[¶20.]    The Englunds argue that Smith had a duty to protect G.E. from intentional or criminal conduct at his residence and rental property. "On the whole, we recognize no general duty to protect one's fellow human beings from crime, and that rule equally applies to the ordinary relationship of landlord and tenant." *Lagow,* 2002 S.D. 37, ¶ 12, 642 N.W.2d at 190-91. "If a duty exists for such protection, it must originate from some special relationship imposing an obligation to protect another from crime based on a position of dependence intrinsic to the relationship." *Id.* ¶ 12, 642 N.W.2d at 191.

[¶21.]    However, "[s]ection 302B of Restatement (Second) of Torts (1965) creates an exception to the general rule that one has no duty to protect another from crime." *Id.* ¶ 16, 642 N.W.2d at 191.[6] "It provides that such a duty may arise if a person's affirmative acts or omissions create a foreseeable high risk of harm from criminal assault." *Id.* ¶ 16, 642 N.W.2d at 191-92. "Thus, landlords who by their own affirmative acts or omissions create a high risk of harm from crime owe a duty to exercise reasonable care to protect tenants from that increased risk." *Id.* ¶ 16, 642 N.W.2d at 192. "Landlord responsibility also depends on the foreseeability of a criminal act." *Id.* Foreseeability is determined "by examining all the

---

6.    The full text of Restatement (Second) of Torts § 302B provides:

> An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

circumstances, including the landlord's knowledge of prior criminal incidents on the premises." *Id.* ¶ 19, 642 N.W.2d at 192. "The prior incidents must be sufficiently numerous or of such significance and similarity that the landlord was on notice that there was probable danger to the tenants." *Id.*

[¶22.]     Relying on the *Lagow* case, the Englunds argue that Smith owed a duty to G.E. In *Lagow*, a tenant was murdered in her apartment after her killers had entered with a key. *Id.* ¶ 15, 642 N.W.2d at 191. The tenant had previously told her landlord that she had misplaced her apartment key. *Id.* There was a question of fact as to whether tenant had asked her landlords to change the locks or whether she believed that the key would "turn up." *Id.* Under tenant's lease agreement, the apartment locks could only be changed by her landlords. *Id.*

[¶23.]     A full reading of *Lagow* makes clear that the landlord's heightened responsibility *in that case* came from the language of the lease agreement, whereby the landlords exclusively controlled the tenant's lock, and her safety from the outside world. Here, even assuming that Smith agreed to remove the rocks, he did not have *exclusive* control over G.E.'s safety, as in *Lagow*. There were other ways that G.E. could have been protected from the alleged intentional or criminal acts of K.V. The Englunds suggest that K.V.'s rock throwing was a well-known problem. Accordingly, the Englunds could have limited G.E.'s ability to play in her neighbors' backyard without adult supervision.

[¶24.]     There is also a dispute as to whether Smith knew that K.V. was throwing rocks. Viewing the facts in the light most favorably to G.E., we assume that Smith had knowledge of K.V.'s propensity for rock throwing. Even if Smith

were aware that K.V. was throwing rocks, the evidence does not suggest that K.V. has previously thrown rocks at people. Accordingly, the alleged intentional or criminal acts of K.V. were not sufficiently foreseeable. Therefore, the trial court did not err in granting summary judgment based on its finding that the Englunds failed to prove that Smith had a duty to protect G.E. from K.V.'s alleged intentional or criminal behavior.

## CONCLUSION

[¶25.] Viewing the evidence in the light most favorable to G.E., the record reflects that Smith parted with full possession of the leased premises and did not maintain a common area. Further, Smith's alleged agreement to remove the rocks did not make the "landscaping condition" more dangerous. Further, K.V.'s alleged criminal act was not sufficiently foreseeable to Smith. Therefore, the trial court did not err in concluding that Smith did not owe a duty of care to G.E. and in granting summary judgment in favor of Smith.

[¶26.] Affirmed.

[¶27.] GILBERTSON, Chief Justice, and SEVERSON, Justice, concur.

[¶28.] KONENKAMP, Justice, concurs in result.

[¶29.] ZINTER, Justice, deeming himself disqualified, did not participate.


KONENKAMP, Justice (concurring in result).

[¶30.] This lawsuit raises the question of a landlord's duty to protect neighbor children from the injurious acts of tenant children. For reasons of public policy, and under the particular facts of this case, that duty should be circumscribed.

[¶31.] Considering the evidence in a light most favorable to the nonmoving party, as the law requires, the record shows that the landlord knew his tenants' twelve-year-old child had been throwing rocks. "A couple of weeks before the incident," the landlord had intercepted the child and told him to stop when the child was throwing a rock toward the landlord's house. And, based on other information the landlord had, a fair inference can be drawn that he knew neighbor children were endangered. Indeed, plaintiff father had seen the tenants' child throwing rocks twice and told the landlord both times. On another occasion, the tenants' child was seen hoisting a large chunk of concrete near where other children were playing. Recognizing the obvious danger, an adult told him to put the concrete down. Again, the landlord was informed, and, at that point, he decided to remove the landscape rocks from his property and the tenants' property. Within a few days, he bought a skid loader to perform the job. Three weeks later, however, with the landscape rocks unremoved, the tenants' child picked up a rock from the landscaping material in the tenants' yard and chased the child victim. She ran. But when she turned to see if he had gone, he hit her in the head with the two-pound, softball-sized rock, causing unconsciousness and serious cranial injury.

[¶32.] Plaintiffs assert, among other things, that the landlord was negligent in his duty to prevent the tenants' child from injuring the neighbor child by "intentional or criminal conduct that [the landlord] knew of or could expect to occur at his residence and rental property." We must decide what duty the landlord had in these circumstances. "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a

particular standard of conduct toward another." W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 53, at 356 (5th ed. 1984). Negligence "is conduct which falls below the standard established by law for the protection of others against unreasonable risk." *Id.* § 43, at 280; *see also* SDCL 20-9-1. Courts decide the existence of a duty because it is "'entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law. . . .'" *Tipton v. Town of Tabor*, 1997 S.D. 96, ¶ 11, 567 N.W.2d 351, 357 (quoting W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 37, at 236 (5th ed. 1984)) (additional citations omitted).

### 1. Control of the Premises

[¶33.] The rock used in this incident came from the tenants' yard. Our Court rules today that the landlord parted with full possession and control of this part of the rental premises. Yet his possession of the premises, generally, is not at issue. Rather, the question is whether the landlord retained control of the *landscaping rock* appurtenant to the tenants' premises. Viewing the evidence in a light most favorable to the plaintiffs, the landlord retained control of the landscaping rock. He, not the tenants, announced an intention to remove it and then took action by obtaining a skid loader. By implication, the landlord's undertaking to remove the rock negates a conclusion that he parted with full control of this area. Thus, we must take a step further to determine the question of duty.

### 2. Foreseeability of Injury

[¶34.]      We have often said that whether a duty exists in tort "depends on the foreseeability of injury."[7] *See Mark, Inc. v. Maguire Ins. Agency, Inc.,* 518 N.W.2d 227, 229-30 (S.D. 1994) (citation omitted). The test is purely prospective. Deciding foreseeability is not a function of predicting the past, for hindsight is not the standard. In determining whether something was foreseeable, we do not ask what actually happened, but what a reasonable person would have foreseen as likely to happen. Leon Green, *Foreseeability in Negligence Law*, 61 Colum. L. Rev. 1401, 1417 (1961); *Ballard v. Uribe*, 715 P.2d 624, 628 n.6 (Cal. 1986). Here, the landlord knew from personal knowledge and neighbor complaints that his tenants' twelve-year-old child had a proclivity for throwing rocks around the tenancy where other children were playing. That noxious and unrestrained behavior certainly portended likely personal injury. And the landscaping materials on the tenancy made rocks readily available. Thus, contrary to the Court's holding, it must be concluded that this injury was foreseeable. Indeed, the landlord's decision to remove the rocks in reaction to complaints illustrates his anticipation of potential injury and only bolsters the case for foreseeability. But foreseeability forms only part of the duty analysis. Public policy also plays a "major" role in deciding questions of duty. *Kirlin v. Halverson*, 2008 S.D. 107, ¶ 52, 758 N.W.2d 436, 453 (citation omitted).

---

7.    We deal here with foreseeability in the duty sense, a question of law, which focuses on whether the landlord should have acted to reduce the probability of the tenant child striking a neighbor child with a rock. Once a duty is found, the fact finder would then use foreseeability in the causation sense to decide whether the landlord's duty-required measures would have prevented the incident that gave rise to the injury.

### 3. Role of Public Policy

[¶35.] "No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 53, at 359 (5th ed. 1984). Would reasonable persons recognize a duty on the landlord here to protect a neighbor child? The Restatement of Torts, as a quasi codification of common law tort duties, seems inadequate to this particular question. Plaintiffs also cite as helpful authority *Smith ex rel. Ross v. Lagow Construction & Developing Co.*, 2002 S.D. 37, 642 N.W.2d 187. But that case is inapposite because it dealt with a landlord's duty to protect a tenant from a criminal attack in circumstances where the landlord controlled an instrumentality for the tenant's safety, a door lock. Conversely, here we are dealing with the question of a duty to protect a neighbor child from a tenant child. Plaintiffs also ask us to hold the landlord to a higher duty of care by abolishing the common law distinction between licensees and invitees. But, as the Court points out, the evidence is hardly clear on the victim's location and her legal status when she was struck by the rock while playing somewhere in the common backyards.

[¶36.] What makes the duty question troublesome here is that the landlord is being sued for negligently failing to protect a neighbor child from a risk the landlord did not create. In these atypical circumstances, absent controlling authority, courts examine several public policy factors, including "the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the

burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." *Rowland v. Christian*, 443 P.2d 561, 564 (Cal. 1968) (citing W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* (3d ed. 1964); 2 Harper and James, *The Law of Torts* at 1052, 1435 (1956)). Five of these elements — nexus of conduct and injury, moral blame, deterrence, burden, and consequences on the community — advise against judicial recognition of an affirmative duty on the landlord.

[¶37.]    Nothing about ordinary rocks as landscape material suggests an unreasonably dangerous condition.[8] Numerous homes and businesses have landscapes adorned with stone and rock in diverse sizes and shapes. It was only the tenants' child who made the landscaping rocks dangerous here. If children want to throw rocks, or similar objects, it would be extremely difficult to remove every means to prevent such mischief. Rocks are often a natural aspect of the terrain, even when not part of a designed landscape. If landlords of single-family residences must bear a duty to prevent injury to children caused by rock-throwing tenant children, there would be little way of knowing specifically all that might be required

---

8.    Restatement (Second) of Torts § 360 (1965), dealing with a landlord's liability for a "dangerous condition upon that part of the land retained in the lessor's control," would not apply here because the condition of the property itself was not dangerous. *See also* Restatement (Second) of Property: Landlord & Tenant § 17.3 (1977) (almost identical provision). Contrast our case with *Ruiz v. Victory Props., LLC*, 43 A.3d 186 (Conn. App. Ct. 2012), where the defendant landlord's apartment building had a yard strewn with trash, rocks, and broken pieces of concrete. A ten-year-old child carried a large rock from the yard and threw it from a third-story window, injuring another child. There, the court found a violation of the duty of care because the landlord failed to maintain a safe common area on the premises. *Id.* at 194.

to fulfill that duty. And, for children plainly intent on harming other children, removing rocks from a tenancy would hardly present an obstacle to such intent. Maintaining landscape rock on one's property holds little nexus to the injury here.

[¶38.]     As for moral blame, landscaping with rock bears no discernible moral culpability, and the notion that landscaping this way should be deterred is meaningless. On the burden question, liability on landlords and landowners for the misuse of their landscaping rock by mischievous children could be substantial. And the consequences on the community of imposing such a duty may well be detrimental, especially if greater accountability for child misbehavior were to shift to landlords and away from parents.[9] In some instances, of course, a landlord's superior knowledge of a tenant's dangerousness might give rise to a duty to protect, or at least to warn, those who might come in contact with the tenant. But that is not our case. All these considerations suggest that reasonable persons would not recognize a duty here under the facts most favorable to plaintiffs. Indeed, to impose a duty in these circumstances would create a baneful extension of tort liability, tending to make landlords insurers of the safety of persons harmed by the injurious acts of their tenants' children.[10]

---

9.     "In contrast to tort standards, public nuisance doctrine may create broad landlord liability for tenants' illegal activities. Nuisance doctrines, both public and private, encompass a broad range of activities[.]" B. A. Glesner, *Landlords as Cops: Tort, Nuisance & Forfeiture Standards Imposing Liability on Landlords for Crime on the Premises*, 42 Case W. Res. L. Rev. 679, 716 (Summer 1992).

10.    Compare our case with the facts in *Mayer v. Housing Authority of Jersey City*, 202 A.2d 439 (N.J. Super. Ct. App. Div. 1964), *aff'd by per curiam*, 210 A.2d 617 (1965). A child was hit in the eye with a rock thrown by another

(continued . . .)

[¶39.]    Corollary legislative enactments also will not support finding a duty on the landlord. When it comes to personal injury caused by a minor's "malicious and willful" acts, our Legislature has strictly limited the financial responsibility of the minor's parents to $2,500 plus taxable court costs. SDCL 25-5-15. Although no one here characterizes the tenant child's act as both "malicious and willful," if parental liability for these acts is legislatively so limited, how can we say that South Dakota's public policy requires that landlords should bear greater accountability than the parents for a tenant child's intentional acts?

### 4. Assumption of Duty

[¶40.]    On the other hand, even though a duty may not exist in law, a duty can be voluntarily assumed, and once assumed, a person must exercise reasonable care in the performance of that duty. Did the landlord assume a duty to protect neighbor children from his tenants' rock-throwing child when he said he would remove the landscape rock? The backyards held by the tenants, the injured child's parents, and the landlord were apparently all used as a common play area for the children. In fact, the landlord's yard had a swing set the children were allowed to use. Plaintiffs assert that the landlord "recognized a danger and took initial steps to remedy it, but then failed to follow through on his promise." In *Andrushchenko v.*

---

(. . . continued)

unknown child on a playground at the landlord's housing project. There, the opinion rested liability not on foreseeability, but on the duty prong. And the court imposed liability, not because of the presence of stones on the playground, but because the defendant, knowing that children were in the habit of throwing stones, failed to take reasonable precautions (hiring playground supervisors) to prevent stone throwing.

*Silchuk*, 2008 S.D. 8, ¶ 24, 744 N.W.2d 850, 858, we dealt with the gratuitous duty rule as defined in Restatement (Second) of Torts, § 323 (1965):

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

[¶41.]     As in *Silchuk*, the facts here taken in a light most favorable to plaintiffs "do not support the implied or express undertaking of a gratuitous duty to" protect a neighbor child.  *See* 2008 S.D. 8, ¶ 24, 744 N.W.2d at 858-89.  The landlord's failure to remove the rocks did not *increase* the risk of harm; that is, it did not make the situation worse than it had been.  A condition not intrinsically dangerous does not become dangerous simply because the landlord had agreed to remove it.  And plaintiffs do not assert that they relied on the landlord's promise as a means to protect their child.  Indeed, the injured child's parents well knew of the tenant child's rock-throwing habits.

[¶42.]     In these circumstances, the landlord had no legal duty to protect the neighbor child from his tenants' rock-throwing child.