#29443-a-MES
**2022 S.D. 6**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

TERESA BURGI, INDIVIDUALLY AND
TERESA BURGI, AS GUARDIAN AD
LITEM FOR K.B.,                                       Plaintiffs and Appellants,

    v.

EAST WINDS COURT, INC.,                               Defendant, Third-Party
                                                      Plaintiff, and Appellee,

    v.

RONALD PASMAN,                                        Third-Party Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DAVID KNOFF
Judge

* * * *

DAVID J. KING
KIRK D. RALLIS of
King Law Firm, P.C.
Sioux Falls, South Dakota                   Attorneys for plaintiffs and
                                            appellants.


MARK J. ARNDT
RYAN W.W. REDD of
Evans, Haigh & Hinton, LLP
Sioux Falls, South Dakota                   Attorneys for defendant and
                                            appellee.

                                            ARGUED
                                            OCTOBER 6, 2021
                                            OPINION FILED **01/26/22**

#29443

SALTER, Justice

[¶1.] Teresa Burgi's minor son, K.B., was attacked by a neighbor's dog near their home in a trailer court owned by her landlord. Teresa commenced this action against the landlord, alleging two negligence theories and a breach of contract claim. The circuit court granted the landlord's motion for summary judgment on each claim. Teresa appeals the court's decision solely as to her general negligence claim. We affirm.

## Facts and Procedural History

[¶2.] East Winds Court is a mobile home community in Yankton owned by the similarly named corporation, East Winds Court, Inc. Teresa Burgi rented a lot from East Winds and lived in East Winds Court with her three children, including K.B. Ronald Pasman was a neighbor of Teresa's and also leased a mobile home lot from East Winds. During the time relevant to this appeal, Pasman lived four lots away from Teresa and K.B.

[¶3.] Pasman owned a pit bull named Marco. The dog originally belonged to Pasman's daughter, but she gave Marco to her father after realizing Marco's size made him unsuited to live in her apartment.[1] Pasman's daughter described Marco as a well-behaved, playful dog.

[¶4.] Pasman's experience with Marco was much the same. He characterized Marco as a friendly dog who never barked or exhibited any behavioral problems. Although Pasman stated he decided to adopt Marco primarily for personal protection, the dog had no record of dangerous altercations with humans

---

1. Marco weighed about eighty pounds.

-1-

while under Pasman's care. Pasman's minor grandson claimed Marco had previously been involved in a fight with another dog, although his recollection of the altercation was vague and otherwise unconfirmed.

[¶5.] When Marco was not inside Pasman's trailer home, he was tethered to the front hitch of the trailer using a body-harness attached to a chain. The chain allowed Marco roughly a ten-to-twelve-foot radius within which he could roam on Pasman's lot. On the day Marco arrived, Pasman affixed two "Beware of Dog" signs to the front of his trailer, one on either side of the hitch.

[¶6.] Near the edge of Pasman's lot was a free-standing basketball hoop. The base of the hoop was located on Pasman's lot, while the hoop itself extended out over the paved street where neighborhood children would occasionally play.[2] The street was owned and maintained by East Winds.

[¶7.] On the afternoon of September 3, 2017, K.B. was playing basketball with Pasman's two young grandchildren in front of Pasman's lot. Marco was outside at the time, chained to the trailer hitch. The exact sequence of events that followed is unclear from the record, but at some point K.B. attempted to retrieve a basketball from Pasman's driveway inside the perimeter of Marco's chain. When K.B. reached for the ball Marco attacked him, biting his face in several places. K.B. ultimately required multiple corrective surgeries. Both parties agree K.B. did nothing to provoke the attack.

---

2. Pasman testified in his deposition that he did not know who owned the hoop or who placed it on his lot.

[¶8.]     John Blackburn is the sole shareholder of the East Winds corporation. He purchased East Winds Court in 2005 and owns several other rental properties in the Yankton area. Ronald Galvan worked as the property manager of East Winds Court and was tasked with maintaining the property, collecting rent, communicating with tenants, and drafting leases. The written leases for Teresa's lot and Pasman's lot treated dog ownership differently—Teresa's lease prohibited dogs, Pasman's did not.

[¶9.]     Section thirteen of Pasman's lease was titled "Pets" and allowed Pasman to have certain "non-vicious" animals, like domestic dogs, on the lot. In a separate section, the lease also included a general remedial enforcement provision stating that a "violation of any one of the terms of this lease, without limitation of its other rights, shall entitle [the] landlord to terminate this lease, re-enter and take over possession forthwith."

[¶10.]     As the property manager, Galvan was charged with keeping an eye on East Winds Court and watching for "violation[s] of the [trailer court] rules." Galvan estimated he drove through the trailer court nearly every day during his time as manager. Blackburn also surveyed the property, though far less frequently, stating he drove through the trailer court approximately twice a year, often riding along with Galvan during his inspections. However, neither Blackburn nor Galvan remembered noticing the "Beware of Dog" signs hung on Pasman's trailer. Galvan did recall seeing Marco chained up outside Pasman's trailer on one occasion but stated that Marco remained "at the end of [Pasman's] lot" and "didn't even bark

when [Galvan] came up to the house." Blackburn claimed he was unaware of Marco's existence.

[¶11.]     After Marco attacked K.B., one of Pasman's neighbors revealed that she remembered the dog's temperament differently. Though she had apparently not reported Marco's behavior previously, she claimed the dog often exhibited aggressive tendencies and would lunge toward her on the end of his chain as she passed by with her lawn mower. In her affidavit, the neighbor stated she remembered seeing the "Beware of Dog" signs posted on Pasman's trailer and further believed that East Winds knew Marco was a danger to the neighborhood, though she offered no explanation as to how or why East Winds knew that Marco was dangerous.

[¶12.]     Acting individually and as K.B.'s guardian ad litem, Teresa commenced this action against East Winds seeking damages for K.B.'s injuries. Her complaint alleged common law negligence, negligence per se, and breach of contract. Teresa did not sue Pasman. However, East Winds filed a third-party complaint against Pasman, seeking indemnification from him in the event it was found liable. Pasman did not answer the third-party complaint and has appeared only as a witness in this action.

[¶13.]     In her general negligence claim, Teresa alleged that East Winds owed a duty as a landlord to protect K.B. from the attack or to warn him of Marco's potential for violence. She further alleged that East Winds knew of Marco's dangerous propensities and failed to exercise reasonable care by not removing him from the premises or otherwise terminating Pasman's lease. The breach of contract

claim alleged Marco's presence in the trailer court was a violation of Teresa's lease, which prohibited pets altogether. However, it appears that after the parties conducted additional discovery and examined Pasman's lease (which allowed non-vicious pets), the claim evolved into an allegation that East Winds allowed Pasman to keep Marco in violation of the non-vicious pets clause in his lease.

[¶14.] East Winds moved for summary judgment as to all of Teresa's claims, which the circuit court granted. As is relevant to the general negligence claim at issue in this appeal, the court concluded that East Winds owed no legal duty to K.B. while he was present on Pasman's leased premises outside of a common area, and, in any event, East Winds had no knowledge of Marco's alleged dangerous propensities. Teresa appeals, alleging East Winds owed a duty to protect K.B. from Pasman's dog and that there are disputed issues of material fact as to whether East Winds was aware of Marco's dangerous propensities.[3]

### Standard of Review

[¶15.] "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Ridley v. Sioux Empire Pit Bull Rescue, Inc.*, 2019 S.D. 48, ¶ 11, 932 N.W.2d 576, 580. "We view the evidence most favorably to the nonmoving party and resolve reasonable doubts against the moving party." *Id.*

---

3. From our review of Teresa's submissions on appeal, it appears she has abandoned her claims of negligence per se and breach of contract, both of which were also determined adversely to her in the circuit court's summary judgment order.

(citation omitted). The procedural issue presented by a circuit court's decision to grant a motion for summary judgment is a question of law that we review de novo. *See Zochert v. Protective Life Ins. Co.*, 2018 S.D. 84, ¶ 18, 921 N.W.2d 479, 486 (citation omitted) ("We review a circuit court's entry of summary judgment under the de novo standard of review.").

[¶16.] The substantive question at issue in this case—the existence of a legal duty as a necessary element of a plaintiff's negligence claim—is also a question of law that is reviewed de novo. *Sheard v. Hattum*, 2021 S.D. 55, ¶ 23, 965 N.W.2d 134, 141 (citing *Kirlin v. Halverson*, 2008 S.D. 107, ¶ 28, 758 N.W.2d 436, 448).

## Analysis and Decision

### *Landlord's Reserved Control*

[¶17.] As an overarching legal principle, "[t]he law of premises liability is based on possession and control." *Clauson v. Kempffer*, 477 N.W.2d 257, 259 (S.D. 1991) (citing W. Page Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser and Keeton on the Law of Torts* § 57, at 386). Viewed in the specific context of landlord liability, we have applied the Restatement (Second) of Torts and stated the general rule as follows: "a landlord, having parted with full possession of the premises to the tenant is not liable for injury to third persons caused by the tenant's negligence." *Id.*; *see* Restatement (Second) of Torts § 355 (Am. L. Inst. 2021) ("Except as stated in §§ 357 and 360–362, a lessor of land is not subject to liability to his lessee or others upon the land . . . for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession."); *Englund v. Vital*, 2013 S.D. 71, ¶ 11, 838 N.W.2d 621, 627 (stating the general rule of landlord liability set out in

*Clauson*); *see also Walther v. KPKA Meadowlands Ltd. P'ship*, 1998 S.D. 78, ¶ 42, 581 N.W.2d 527, 535 (holding that there is no "special relationship" between a landlord and a tenant that would impose a duty upon landlords to protect a person from the unlawful acts of another).

[¶18.] Under the terms of their lease agreement, East Winds parted with full possession of the lot it rented to Pasman. As stated in a leading treatise:

> When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the premises for the term. The lessee acquires an estate in land, and becomes for the time being both owner and occupier, subject to all of the responsibilities of one in possession, to those who enter upon the land and those outside of its boundaries.

W. Page Keeton et. al., *Prosser and Keeton on the Law of Torts* § 63, at 434. Although the written lease contained several restrictions upon *Pasman's* use of the premises, such as the one regulating pets, these restrictions did not impose a duty on East Winds to act in any particular way.

[¶19.] Teresa submits a contrary argument in which she attempts to avoid the general rule by claiming East Winds did not part with full possession and control of Pasman's lot. As support, she cites our decision in *Clauson*, and argues that a landlord may be held liable to third parties for the negligent acts of a tenant where the landlord reserves a right of re-entry or "any right to control what activities were performed on the land or how they were conducted." *See* 477 N.W.2d at 261. But Teresa misreads this passage from *Clauson*.

[¶20.] As an initial matter, the reserved-control quote from *Clauson* was not part of our holding but, rather, was included to address an unsuccessful argument by the appellant-plaintiff. In *Clauson*, we applied the Restatement § 355 rule set

out above and held that the landlord was not subject to liability for injuries sustained by the plaintiff who drove a motorcycle into a fence constructed by the landlord's tenant. In so doing, we rejected the plaintiff's claim that the landlord knew the tenant would build a dangerous fence on the property and, therefore, owed a legal duty under Restatement (Second) of Torts § 379A (Am. L. Inst. 2021).[4]

[¶21.]     As an additional comment, we noted that the landlord "reserved no right of re-entry, and [the landlord] did not reserve any right to control what activities were performed on the land or how they were conducted." *Clauson*, 477 N.W.2d at 261. However, this statement merely expressed a corollary to the general rule for landlord liability. It did not delineate a legal test for assessing the extent of a landlord's control and surely did not hold that *any* type of restriction on a tenant's use of the leased premises was sufficient to render the general rule inapplicable. Indeed, we do not believe this to be the case.

---

4.     Section 379A requires, among other things, that the landlord have actual knowledge of the tenant's intent to engage in dangerous activity on the leased premises before the landlord can be subject to liability. We noted that § 379A was also inapplicable in *Clauson* because it contemplates liability in situations involving physical harm to persons "*outside of the land*." 477 N.W.2d at 260 n.5. However, the plaintiff's injuries in *Clauson*, as in the case currently before us, occurred *on* the leased premises. *See id.* at 258 (describing the location of the fence on the property's "northern border"). The circumstances of *Easson v. Wagner*, 501 N.W.2d 348 (S.D. 1993), illustrate the on-property/off-property distinction. In *Easson*, the plaintiffs sued the landlord of a neighboring mine for property damage resulting from a tenant's blasting activity at the mine. After the circuit court granted the landlord's motion for summary judgment, we reversed and remanded the case to resolve disputed factual issues based upon an application of Restatement (Second) of Property: Landlord and Tenant § 18.4 (Am. L. Inst. 1977), which is identical to § 379A of the Restatement (Second) of Torts.

[¶22.] Here, the fact that East Winds' lease with Pasman included a provision concerning pets does not mean that East Winds reserved control over dogs in its mobile home park or that it did not part with possession of the leased premises. The relevant section of the lease provides as follows:

> PETS: TENANT assumes all responsibilities for pets. Dogs are only allowed on TENANT'S property. Dogs are not allowed to run free in East Winds Court. Barking of dogs, day or night is not allowed. Only harmless, non-vicious, safe, pets such [as] domestic dogs, housecats and indoor birds are allowed within East Winds Court, Inc. without the prior written permission of the LANDLORD. TENANTS are prohibited from keeping any other type or description of pet or animal or reptile. If a TENANT has a noisy pet such as a barking dog, the TENANT will have to purchase at the TENANTS [sic] own expense a muzzle and keep it on his/her dog at all times to prevent barking.

[¶23.] Interpreting the plain language of the pet provision, we conclude that it does not constitute a reservation of East Winds' authority to control dogs on the tenant's leased premises. *See Tri-City Assocs., L.P. v. Belmont, Inc.*, 2014 S.D. 23, ¶ 9, 845 N.W.2d 911, 914–15 (noting that leases are contracts whose interpretation is a question of law reviewed de novo). Instead, it imposes upon the *tenant* "all responsibilities for pets" and is best read as a promise by the tenant to keep only "non-vicious, safe" pets on the premises. Nothing in the text of this provision imposes an obligation upon East Winds concerning pets.

[¶24.] The Appellate Court of Connecticut reached the same conclusion under similar circumstances and rejected a plaintiff's argument that a landlord had a duty to investigate her tenants' pet based upon a lease provision that allowed the landlord "discretion to approve or deny the ability of [the] tenants to own or keep pets on the property." *Raczkowski v. McFarlane*, 225 A.3d 305, 311 (Conn. App. Ct.

2020). In the court's studied view, the lease provision operated exclusively for the benefit of the landlord and "did not impose a duty on the defendant to perform an extraneous investigation of the dog's behavioral propensities."[5] *Id.*

[¶25.] The *Raczkowski* court also rejected the plaintiff's reserved-control argument, holding that the plain language of the lease "g[a]ve the tenant complete control and possession of the property[.]" *Id.* at 312; *see also Howle v. Aqua Ill., Inc.*, 978 N.E.2d 1132, 1144, (Ill. App. Ct. 2012) ("[The landlord's] ability to terminate [the tenant's] tenancy (and the fact that it later did so) because of the conduct of his dogs does not constitute the requisite control that imposes a duty . . . ."); *Gilbert v. Miller*, 586 S.E.2d 861, 865 (S.C. Ct. App. 2003) ("The lease provision prohibiting pets in multifamily units was not equivalent to a promise creating a duty on the part of [the landlord] to keep the premises free from pets or vicious dogs."). This rationale is consistent with the general rule for landlord liability as stated by our precedent and "also promotes the salutary policy of placing responsibility where it belongs, rather than fostering a search for a defendant whose affluence is more apparent than his culpability." *See Clemmons v. Fidler*, 791 P.2d 257, 260 (Wash. Ct. App. 1990).

[¶26.] Finally, Teresa's additional argument that the general enforcement provision in Pasman's lease created a duty to enforce the pets provision is equally unsustainable. Notwithstanding the fact that the argument begs the question of whether East Winds was aware of any reason to terminate the lease in the first

---

5. These determinations were made in the context of the *Raczkowski* court's analysis of the plaintiff's argument that she was a third-party beneficiary of the pet provision. Teresa has not made a similar claim here.

-10-

instance, the enforcement provision merely provides East Winds with the remedy of terminating the lease and regaining possession of the premises in the event Pasman would breach "any one of the terms of this lease[.]" Nothing compels East Winds to elect this remedy in the event of Pasman's default, and the existence of the remedy does not suggest a degree of lingering control beyond that which non-breaching parties commonly possess in a variety of contexts involving written contracts.[6] *See* *Middleton v. Klingler*, 410 N.W.2d 184, 186 (S.D. 1987) (quoting 5A A. Corbin, Corbin on Contracts § 1227, 502 (1964)).

[¶27.] We hold, therefore, that the provisions of Pasman's lease agreement do not prevent the operation of the general rule precluding a landlord's liability for "physical harm caused by a dangerous condition which comes into existence after the lessee has taken possession." *See* Restatement (Second) of Torts § 355.

### *Control of a Common Area*

[¶28.] The general rule under which landlords are not subject to liability for their tenants' negligence is tempered by certain exceptions. We have recognized four principal exceptions, each of which is based upon specific rules set out in the Restatement (Second) of Torts:

> (1) where a lessor contracts to repair the premises, Restatement (Second) of Torts § 357;

---

6. During his deposition, Blackburn testified that he had not seen the "Beware of Dog" signs on Pasman's trailer. If he had, he stated that he would have "taken action" and "investigated" to determine whether the "dog could be a problem." However, this does not mean that Blackburn was obligated by a legal duty to do so or that his efforts to investigate further would have been for the benefit of someone other than East Winds.

(2)     where an undisclosed, dangerous condition exists at the time the lease is entered into which the lessor knew or should have known about, [*Id.* § 358];

(3)     where the lessor retains in his control a common area of the premises which the lessee is entitled to use as appurtenant to the leased portion, [*Id.* § 360,] . . . or is necessary for the safe use of lessee's portion, [*Id.* § 361]; or

(4)     where the lessor, in fact, makes repairs on the land while it is in the lessee's possession and the lessor completes the repairs negligently, [*Id.* § 362].

*Clauson*, 477 N.W.2d at 259 (internal case citations omitted).

[¶29.]     Here, Teresa argues that the third of these exceptions is applicable because K.B. was playing basketball in the "common area" street owned by East Winds prior to Marco's attack. The type of "common area" exception implicated by this claim relies upon Restatement (Second) of Torts § 360 (Am. L. Inst. 2021), which provides as follows:

> A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.

[¶30.]     The rule stated in § 360 requires, as a threshold matter, that a plaintiff's injury was "caused by a dangerous condition upon" the common area over which the landlord retains control. If the injury did not occur in a common area or was not caused by a dangerous condition existing "upon" the common area, the general rule of the Restatement (Second) of Torts § 355 applies, and the landlord is

not subject to liability—i.e., the landlord owes no duty to the plaintiff. Our decision in *Englund* is instructive.

[¶31.] In *Englund*, we affirmed the circuit court's determination that a landlord was not liable to a third party for the negligence of a tenant under the common area exception for two separate reasons: 1) there was no indication the injury occurred in a common area; and 2) regardless, there was no dangerous condition within the alleged common area. 2013 S.D. 71, ¶ 16, 838 N.W.2d at 628. The plaintiffs in *Englund* were the parents of a minor child who was seriously injured by a rock thrown at her head by the child of the landlord's tenant. In their negligence suit against the landlord, the parents claimed that the injury took place in a common area—the landlord's backyard—and sought to impose liability based on the common area exception. However, the undisputed material facts established that the landlord's backyard was not a common area, but "[e]ven if [the landlord's] backyard did constitute a common area, the 'dangerous condition' or rock did not come from the common area." *Id.*

[¶32.] Here, a similar analysis applies, and we cannot accept Teresa's alternative landlord-control argument based upon the common area exception. The undisputed evidence indicates that K.B.'s injuries occurred entirely on Pasman's leased lot and were inflicted by a dog that "did not come from the common area." *See id.* Moreover, there is no evidence that East Winds installed or maintained the basketball hoop adjacent to the common area of the privately owned street or that its continued use was unsafe. At most, the placement of the basketball hoop may represent a causative link in the chain of events leading up to K.B.'s injuries, but it

cannot be said that East Winds failed to maintain a common area over which it had control and should therefore be subject to liability for K.B.'s injuries. *Cf. Shields v. Wagman*, 714 A.2d 881, 892 (Md. 1998) (reversing summary judgment for a landlord who was aware of the dog's vicious tendencies, and the attack occurred in a common area).

### *Landlord Liability Based on Knowledge of a Dog's Propensities*

[¶33.] Teresa's arguments focus principally on the question of whether Marco's attack on K.B. was foreseeable to East Winds. We have held, in this regard, that a plaintiff may establish a triable issue of liability with a showing that a dog's owner knew or had reason to know of the dog's dangerous propensities. *See Ridley*, 2019 S.D. 48, ¶ 14, 932 N.W.2d at 580 (quoting *Rowland v. Log Cabin, Inc.*, 2003 S.D. 20, ¶ 9, 658 N.W.2d 76, 79) ("[A] plaintiff in a dog bite case may either argue to the jury that the owner knew or should have known of the dog's dangerous propensities or that, under the totality of the circumstances, injury to the plaintiff was reasonably foreseeable.").

[¶34.] This rule presumes the existence of a duty to act reasonably and is most often applied to determine liability questions for dog *owners*. *See, e.g.*, *Gehrts v. Batteen*, 2001 S.D. 10, ¶ 7, 620 N.W.2d 775, 778 ("[T]he failure to act upon the knowledge of an animal's abnormally dangerous propensities establishes a breach of the duty of care owed by the owner to those that come in contact with the animal.") We have extended the dangerous-propensity rule beyond dog-owner defendants in only one instance by applying it to a business owner where an invitee was attacked by another patron's dog. *See Rowland*, 2003 S.D. 20, ¶ 11, 658 N.W.2d at 79.

[¶35.]     In *Rowland*, we held that the reasonable person standard applies in the same way to both the "duty owed by a business owner to a business invitee and the duty owed by a dog owner to individuals in society[.]"  2003 S.D. 20, ¶ 11, 658 N.W.2d at 79.  As support, we cited our holding in *Small v. McKennan Hosp.*, 437 N.W.2d 194 (S.D. 1989), but the existence of common law duty (from which a breach under the dangerous-propensity rule may follow) is different for business owners and invitees than it is for landlords and tenants.

[¶36.]     As we had previously recognized in *Walther*, business owners and invitees have a "special relationship" that imposes a duty upon business owners to act reasonably to protect invitees from foreseeable injury.  1998 S.D. 78, ¶ 44, 581 N.W.2d at 536.  However, Teresa has not claimed K.B. was an invitee of East Winds.  He lived at East Winds Court, but the relationship between a landlord and a tenant does not qualify as a special relationship that would provide a predicate basis for a common law duty for landlords, like East Winds.  *See id.*  Therefore, *Rowland* is inapposite, and the dangerous-propensity rule does not apply here because Teresa cannot demonstrate, as an initial matter, the existence of a duty that would subject East Winds to liability.

[¶37.]     We are aware that some jurisdictions have adopted a rule that imposes liability on a landlord where the landlord has reserved control over the presence of dogs on the leased premises and has knowledge of the dog's vicious propensities.  *See, e.g., Uccello v. Laudenslayer*, 118 Cal. Rptr., 741, 743 (Cal. Ct. App. 1975); *see also* Danny R. Veilleux, Annotation, *Landlord's liability to third person for injury resulting from attack on leased premises by dangerous or vicious animal kept by*

*tenant*, 87 A.L.R. 4th 1004 (1991) (collecting cases and distilling the general rule as stated above). However, this narrow rule created by some courts for this class of dog bite cases cannot be reconciled with our decisions setting out the principles governing the broader topic of a landlord's liability for the conduct of its tenant. *See Clauson*, 477 N.W.2d at 259; *Englund*, 2013 S.D. 71, ¶ 11, 838 N.W.2d at 627.

[¶38.]    Under the circumstances, Teresa's effort to apply the dangerous-propensity rule is unsustainable because there is no underlying legal duty in the absence of either a special relationship or the landlord's retained control over the leased premises. Therefore, it is unnecessary to address whether East Winds had knowledge of Marco's alleged dangerous propensities.

## Conclusion

[¶39.]    Marco's attack on K.B., while undoubtedly tragic, is simply not actionable, at least as to East Winds, because there is no duty that would subject it to liability.[7] We therefore affirm the circuit court's summary judgment order in favor of East Winds.

[¶40.]    JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.

---

7.    We express no opinion as to Pasman's liability as Marco's owner.